## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

X CORP.,

        Plaintiff,

v.

KEITH ELLISON, in his official capacity,
as Attorney General of Minnesota

        Defendant.

Civil No. 25-cv-1649 (LMP/DLM)

**MEMORANDUM OF LAW IN
SUPPORT OF X CORP.'S
MOTION FOR JUDGMENT ON
THE PLEADINGS ON ITS
SECTION 230 CLAIM**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................. 2

    I.     Procedural History ............................................................................................ 2

    II.    Statutory Schemes of Section 609.771 & Section 230 ......................................... 3

          a.    Section 609.771 ..................................................................................... 3

          b.    Section 230 ........................................................................................... 6

LEGAL STANDARD ..................................................................................................... 8

ARGUMENT .................................................................................................................. 9

    I.     Section 609.771 Is Subject to Express and Conflict Preemption ......................... 9

    II.    Section 609.771's Penalty and Relief Provisions Violate and are Preempted by Section 230(c)(1) .......................................................................................................... 12

CONCLUSION ............................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Al-Ahmed* v. *Twitter, Inc.*,
  648 F. Supp. 3d 1140 (N.D. Cal. 2023) ........................................................................ 7n

*Barnes* v. *Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) ...................................................................................... 14

*Ben Ezra, Weinstein, & Co., Inc.* v. *Am. Online Inc.*,
  206 F.3d 980 (10th Cir. 2000) ...................................................................................... 11

*Bennett* v. *Google, LLC*,
  882 F.3d 1163 (D.C. Cir. 2018) .................................................................................... 11

*Brittain* v. *Twitter, Inc.*,
  2019 WL 2423375 (N.D. Cal. June 10, 2019) ...................................................... 7n, 13

*Calise* v. *Meta Platforms, Inc.*,
  103 F.4th 732 (9th Cir. 2024) ...................................................................................... 14

*Carafano* v. *Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) ...................................................................................... 11

*Castronuova* v. *Meta Platforms, Inc.*,
  2025 WL 1914860 (N.D. Cal. June 10, 2025) ............................................................. 7n

*Dehen* v. *Does 1-100*,
  2018 WL 4502336 (S.D. Cal. Sept. 19, 2018) ...................................................... 7n, 18

*Dyroff* v. *Ultimate Software Grp., Inc.*,
  934 F.3d 1093 (9th Cir. 2019) ...................................................................................... 10

*E. Coast Test Prep LLC* v. *Allnurses.com, Inc.*,
  307 F. Supp. 3d 952 (D. Minn. 2018) ........................................................... 8, 9, 13, 15

*E. Coast Test Prep LLC* v. *Allnurses.com, Inc.*,
  971 F.3d 747 (8th Cir. 2020) ........................................................................... 10, 15, 16

*Eng.* v. *Gen. Elec. Co.*,
  496 U.S. 72 (1990) ............................................................................................ 9, 10, 12

*Faegre & Benson, LLP* v. *Purdy*,
  367 F. Supp. 2d 1238 (D. Minn. 2005) ........................................................................ 17

ii

*Fair Hous. Council of San Fernando Valley* v. *Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008) .................................................................................. 9, 13

*Fields* v. *Twitter, Inc.*,
217 F. Supp. 3d 1116 (N.D. Cal. 2016), *aff'd*, 881 F.3d 739 (9th Cir.
2018) ........................................................................................................ 7n, 12, 13, 18

*Geegieh* v. *Unknown Parties*,
2025 WL 1769766 (D. Ariz. June 26, 2025) ............................................. 7n, 16, 18, 19

*Green* v. *Am. Online*,
318 F.3d 465 (3d Cir. 2003).......................................................................................... 13

*Gregerson* v. *Vilana Fin., Inc.*,
2008 WL 451060 (D. Minn. Feb. 15, 2008) .................................................................. 16

*Johnson* v. *Arden*,
614 F.3d 785 (8th Cir. 2010) ........................................................... 3, 9, 12, 13, 14, 15

*Jones* v. *Dirty World Ent. Recordings LLC*,
755 F.3d 398 (6th Cir. 2014) ........................................................................................ 11

*Jones* v. *Twitter, Inc.*,
2020 WL 6263412 (D. Md. Oct. 23, 2020) ................................................................... 7n

*Klayman* v. *Zuckerberg*,
753 F.3d 1354 (D.C. Cir. 2014) .................................................................................... 13

*Kohls* v. *Ellison*, No. 24-cv-3754, 2025 WL 66765 (D. Minn. Jan. 10,
2025), *appeal pending*, No. 25-1300 (8th Cir.) ............................................................ 2

*Murphy* v. *Twitter, Inc.*,
60 Cal. App. 5th 12 (2021) ........................................................................................... 7n

*Nemet Chevrolet, Ltd.* v. *Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009) ........................................................................................ 10

*M.A. ex rel. P.K.* v. *Vill. Voice Media Holdings, LLC*,
809 F. Supp. 2d 1041 (E.D. Mo. 2011)......................................................................... 17

*PatentWizard, Inc.* v. *Kinko's, Inc.*,
163 F. Supp. 2d 1069 (D.S.D. 2001) ............................................................................ 17

*S.C.* v. *Dirty World, LLC*,
2012 WL 3335284 (W.D. Mo. Mar. 12, 2012)............................................................. 17

*Safeco Ins. Co. of Ill.* v. *Burton*,
657 F. Supp. 3d 1176 (D. Minn. 2023), *appeal dismissed*, 2023 WL
10408911 (8th Cir. Nov. 21, 2023) .............................................................................. 8n

*Steele* v. *Mengelkoch*,
2008 WL 2966529 (Minn. Ct. App. Aug. 5, 2008) .................................................... 17

*U.S.* v. *Any and all Radio Station Transmission Equip.*,
207 F.3d 458 (8th Cir. 2000) ...................................................................................... 8

*Webb* v. *State*,
2021 WL 161959 (Minn. Ct. App. Jan. 19, 2021) ...................................................... 5n

*Wilson* v. *Twitter*,
2020 WL 3410349 (S.D.W. Va. May 1, 2020), *report and
recommendation adopted*, 2020 WL 3256820 (S.D.W. Va. June 16,
2020) .......................................................................................................................... 7n

*Winter* v. *Facebook, Inc.*,
2021 WL 5446733 (E.D. Mo. Nov. 22, 2021) ...................................................... 13, 17

*Yuksel* v. *Twitter, Inc.*,
2022 WL 16748612 (N.D. Cal. Nov. 7, 2022) ............................................................ 7n

*Zeran* v. *Am. Online, Inc.*,
129 F.3d 327 (4th Cir. 1997) .............................................................................11, 12-13

**Statutes**

47 U.S.C. § 230 .........................................................................................................*passim*

Minn. Stat. § 609.771 ................................................................................................*passim*

Minn. Stat. § 645.44 ...................................................................................................... 5n

## INTRODUCTION

The statute in this case, Minnesota Statutes § 609.771 ("Section 609.771"), provides for criminal and monetary penalties and injunctive and equitable relief against any "person" that "disseminates a deep fake or enters into a contract or other agreement to disseminate a deep fake," § 609.771(2)(a), if certain statutory conditions are met. Because, as a matter of law, the statute permits these penalties to apply to providers of an "interactive computer service" ("ICS")—as that term is defined under Section 230 of the Communications Decency Act of 1996 ("Section 230")—based on content on their platforms that was created, developed, and posted entirely by third parties, the law is preempted by Section 230 to the extent that it is applied to ICS providers, such as X Corp.

To avoid liability under Section 609.771, X Corp. and other ICS providers would need to actively monitor for, detect, and delete content posted by third parties on their platforms that is proscribed by Section 609.771(2)—i.e., certain "deep fakes," as defined by the statute.  Section 609.771 thus directly interferes with and attempts to hold X Corp. liable for its decisions about what third-party content it will permit on its platform, and for that reason, it violates and is preempted by Section 230(c)(1).

This Court can and should make this determination as a matter of law pursuant to Federal Rule of Civil Procedure 12(c).  There are no facts in dispute—let alone any material facts—that would preclude judgment on the pleadings, and the undisputed facts make plain that Section 609.771 is preempted by Section 230 as a matter of law.

## BACKGROUND

### I.    Procedural History

X Corp. instituted this action against Defendant Attorney General Keith Ellison on April 23, 2025, challenging Section 609.771 on grounds that it violates (1) the First Amendment of the U.S. Constitution and Article 1, Section 3, of the Minnesota Constitution and (2) Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1).  ECF No. 1 ("X Corp. Compl.").

Attorney General Ellison filed an Answer to X Corp.'s Complaint on May 15, 2025, and, on June 3, 2025, moved to stay X Corp.'s case in its entirety pending the Eighth Circuit's resolution of the appeal of this Court's order denying a preliminary injunction in the related *Kohls* v. *Ellison* case, No. 24-cv-3754, 2025 WL 66765 (D. Minn. Jan. 10, 2025), *appeal pending*, No. 25-1300 (8th Cir.).  ECF Nos. 16 ("AG's Answer"), 18, 21. Defendant sought for the Court to stay X Corp.'s First Amendment claims and its Section 230 claim.  ECF Nos. 18, 21.  X Corp. opposed Defendant's motion to stay only in part. ECF No. 28.  X Corp. agreed that it would be efficient for the Court to address X Corp.'s First Amendment claims at the same time it addresses the First Amendment claims in *Kohls*, but argued that there was no legitimate basis to stay X Corp.'s Section 230 claim, which is founded on distinct legal principles and can and should be decided as a matter of law.  *Id.* at 1–2, 5.  In that opposition, X Corp. also represented that it intended to move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on its Section 230 claim (Count 2).  *Id.* at 2.

2

On July 3, 2025, the Court granted in part and denied in part Defendant's motion to stay. ECF No. 29. The Court permitted X Corp.'s Section 230 claim to move forward now, without having to wait for the Eighth Circuit's resolution of *Kohls*, because the Eighth Circuit's interpretation of Section 609.771 likely would not impact the Court's analysis of the Section 230 claim. *Id.* at 6. The Court stated that the "*type* of AI-generated content disseminated on X's platform is largely irrelevant to the Section 230 claim because Section 230 prohibits holding an internet service provider legally responsible for *any* material 'originating with a third-party user of the service.'" *Id.* (quoting *Johnson* v. *Arden*, 614 F.3d 785, 791 (8th Cir. 2010) (emphasis in original)).[1] The Court also noted that, should X Corp. succeed on its motion for judgment on the pleadings, the case "will be effectively over—a huge win for judicial efficiency." *Id.* at 8.

This motion followed.

## II. Statutory Schemes of Section 609.771 & Section 230

### a. Section 609.771

Section 609.771 applies to a "person who disseminates a deep fake or enters into a contract or other agreement to disseminate a deep fake" if the "person knows or acts with reckless disregard about whether the item being disseminated is a deep fake and dissemination: (1) is made without the consent of the depicted individual; (2) is made with the intent to injure a candidate[2] or influence the result of an election; and (3) takes place

---

[1] Unless otherwise indicated, emphases in quotes are added and internal citations and quotations are omitted.

[2] "Candidate" means "an individual who seeks nomination or election to a federal,

either: (i) within 90 days before a political party nominating convention; or (ii) after the start of the absentee voting period prior to a presidential nomination primary, or a regular or special state or local primary or general election." § 609.771(2)(a).[3]

The statute defines a "deep fake" as "any video recording, motion-picture film, sound recording, electronic image, or photograph, or any technological representation of speech or conduct substantially derivative thereof: (1) that is so realistic that a reasonable person would believe it depicts speech or conduct of an individual who did not in fact engage in such speech or conduct; and (2) the production of which was substantially dependent upon technical means, rather than the ability of another individual to physically or verbally impersonate such individual." § 609.771(1)(c).

A person who disseminates a deep fake or enters into a contract or other agreement to disseminate a deep fake under the conditions forbidden under the statute is "guilty of a crime" and "may be sentenced . . . (1) if the person commits the violation within five years of one or more prior convictions under this section, to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both; (2) if the person commits the violation with the intent to cause violence or bodily harm, to imprisonment

---

statewide, legislative, judicial, or local office including special districts, school districts, towns, home rule charter and statutory cities, and counties." § 609.771(1)(b).

[3] The statute's prohibitions are currently triggered under Section 609.771(2)(a)(ii) because (i) Minnesota sends absentee ballots "at least 46 days before the election," and (ii) there will be elections in Minnesota this year on August 12 and November 4. *See* X Corp. Compl. Ex. 6 (ECF No. 1-6) (*2025 Minnesota Absentee Ballot Application*, https://www.sos.state.mn.us/media/2444/english-regular-absentee-ballot-application.pdf).

for not more than 364 days or to payment of a fine of not more than $3,000, or both; or (3) in other cases, to imprisonment for not more than 90 days or to payment of a fine of not more than $1,000, or both." §§ 609.771(2)(a), (3)(a)(1)–(3).

In addition, a "cause of action for injunctive or equitable relief may be maintained against any person who is reasonably believed to be about to violate or who is in the course of violating this section by: (1) the attorney general; (2) a county attorney or city attorney; (3) the depicted individual[4]; or (4) a candidate for nomination or election to a public office who is injured or likely to be injured by dissemination." § 609.771(4).

Section 609.771 applies "(i) within 90 days before a political party nominating convention; or (ii) after the start of the absentee voting period prior to a presidential nomination primary, or a regular or special state or local primary or general election." § 609.771(2)(a)(3).

X Corp. is, at least, a "person"[5] that—by requiring users to agree to its Terms of Service[6] before they may use the platform, after which the user could post a deep fake on X prohibited by the statute that X would automatically "disseminate"—"enters into a

_____

[4] "Depicted individual" means "an individual in a deep fake who appears to be engaging in speech or conduct in which the individual did not engage." § 609.771(1)(d).

[5] Section 609.771 does not define "person," and under Minnesota law, "'Person' may extend and be applied to bodies politic and corporate, and to partnerships and other unincorporated associations." Minn. Stat. § 645.44(7); *see* § 645.44(1) (this definition applies to "Minnesota Statutes or any legislative act," including the word "person" "unless another intention clearly appears"); *Webb* v. *State*, 2021 WL 161959, at *3 (Minn. Ct. App. Jan. 19, 2021) ("[Section 645.44(7)'s definition of person] applies to all Minnesota statutes, including criminal statutes, unless otherwise provided.").

[6] X Corp. Compl. Ex. 7 (ECF No. 1-7) (*Terms of Service*, X, https://x.com/en/tos).

contract or other agreement to disseminate a deep fake" under the circumstances set forth in and proscribed by Section 609.771(2)(a). X Corp. Compl. ¶ 34; *see also id.* ¶ 1.

### b.  Section 230

Section 230 promotes the "policy of the United States" to "preserve the vibrant and competitive free market" for the "Internet and other interactive computer services, unfettered" by "State regulation." 47 U.S.C. § 230(b)(2). Section 230 seeks to "promote the continued development of the Internet and other interactive computer services and other interactive media." § 230(b)(1). In enacting Section 230, Congress found that the "Internet and other interactive computer services have flourished, to the benefit of all Americans, with a minimum of government regulation." § 230(a)(4). Under Section 230:

- "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." § 230(c)(1);

- "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." § 230(e)(3);

- An "interactive computer service" is any "information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet[.]" § 230(f)(2); and

- An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." § 230(f)(3).

X Corp. is the "provider" of an "interactive computer service" under Section 230(c)(1) because it provides X, which is an "interactive computer service" under Section 230(f)(2). X Corp. Compl. ¶¶ 23, 76. Numerous courts have held that X and Twitter (as X was previously called) are interactive computer services ("ICS") immunized from liability under Section 230(c)(1),[7] and we are aware of no courts holding to the contrary. While Defendant's Answer denies certain allegations in X Corp.'s Complaint relevant to its Section 230 claim—*see, e.g.*, AG's Answer ¶ 76 (denying, as a legal conclusion, the allegation that X is an "'interactive computer service,' as that term is defined under 47 U.S.C. § 230(f)(2)")—these denials are of legal conclusions, as the AG's Answer states. These denials do not preclude a ruling pursuant to Rule 12(c) that X Corp. is an ICS provider subject to Section 230, which it plainly is.

---

[7] *See Castronuova* v. *Meta Platforms, Inc.*, 2025 WL 1914860, at *4 (N.D. Cal. June 10, 2025); *Geegieh* v. *Unknown Parties*, 2025 WL 1769766, at *5 (D. Ariz. June 26, 2025); *Fields* v. *Twitter, Inc.*, 217 F. Supp. 3d 1116, 1121 (N.D. Cal. 2016), *aff'd*, 881 F.3d 739 (9th Cir. 2018); *Al-Ahmed* v. *Twitter, Inc.*, 648 F. Supp. 3d 1140, 1160 (N.D. Cal. 2023); *Yuksel* v. *Twitter, Inc.*, 2022 WL 16748612, at *3 (N.D. Cal. Nov. 7, 2022); *Murphy* v. *Twitter, Inc.*, 60 Cal. App. 5th 12, 25 (2021); *Jones* v. *Twitter, Inc.*, 2020 WL 6263412, at *3 (D. Md. Oct. 23, 2020); *Wilson* v. *Twitter*, 2020 WL 3410349, at *11 (S.D.W. Va. May 1, 2020), *report and recommendation adopted*, 2020 WL 3256820 (S.D.W. Va. June 16, 2020); *Brittain* v. *Twitter, Inc.*, 2019 WL 2423375, at *2 (N.D. Cal. June 10, 2019); *Dehen* v. *Does 1-100*, 2018 WL 4502336, at *3 (S.D. Cal. Sept. 19, 2018).

Furthermore, as set forth in the Meet and Confer Statement, notwithstanding Defendant's denial of the legal conclusion that X is an ICS under Section 230(f)(2), *id.*, (1) Defendant does not dispute that X is an ICS, as that term is defined under 47 U.S.C. § 230(f)(2) and (2) when asked during the meet and confer whether there were any disputed issues of material fact in connection with this motion, Defendant did not identify any.[8]

Accordingly, this motion presents a pure question of law. There are no disputed issues of material fact that would preclude the Court from granting X Corp.'s motion and entering judgment on the pleadings on its Section 230 claim.

## LEGAL STANDARD

Judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is appropriate when, drawing all reasonable inferences from the pleadings in favor of the non-moving party, no material issues of fact remain to be resolved and the movant is entitled to judgment as a matter of law. *U.S.* v. *Any and all Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000); *see E. Coast Test Prep LLC* v. *Allnurses.com, Inc.*, 307 F. Supp. 3d 952, 961 (D. Minn. 2018) (granting Rule 12(c) motion for judgment

---

[8] There are no other facts needed to resolve the Section 230 claim. Other allegations in X Corp.'s Complaint relating to the Section 230 claim—*see, e.g.*, X Corp. Complaint ¶¶ 1, 34—concern how Section 609.771 may be interpreted as a legal matter, regardless of how it is factually applied. *See Safeco Ins. Co. of Ill.* v. *Burton*, 657 F. Supp. 3d 1176, 1187 (D. Minn. 2023) (courts may interpret "plain language" as "a matter of law" in granting a motion for judgment on the pleadings under Rule 12(c)), *appeal dismissed*, 2023 WL 10408911 (8th Cir. Nov. 21, 2023); *see also* ECF No. 29 at 6 (explaining that the "*type* of AI-generated content disseminated on X's platform is largely irrelevant to the Section 230 claim") (emphasis in original).

on the pleadings based on Section 230(c)(1) immunity), *aff'd*, 971 F.3d 747 (8th Cir. 2020).

"Read together," Sections 230(c)(1), 230(e)(3), and 230(f)(3) "bar plaintiffs from holding [interactive computer services] legally responsible for information that third parties created and developed." *Arden*, 614 F.3d at 791 (citing *Fair Hous. Council of San Fernando Valley* v. *Roommates.com, LLC*, 521 F.3d 1157, 1162–64 (9th Cir. 2008)); *Allnurses.com, Inc.*, 307 F. Supp. 3d at 963 (quoting *Arden*, 614 F.3d at 791).  Section 230 "errs on the side of robust communication." *Arden*, 614 F.3d at 792.

## ARGUMENT

Section 609.771 directly conflicts with, and is thus preempted by, the immunity afforded by Section 230(c)(1), which prohibits treating ICS providers as the "publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  Section 609.771's "Penalty" and "Relief" provisions—which authorize (1) criminal penalties, (2) significant monetary penalties, and (3) causes of action for injunctive or equitable relief for leaving content on platforms that the State finds objectionable (i.e., "deep fakes")—do just that.

## I.    Section 609.771 Is Subject to Express and Conflict Preemption

Under the Supremacy Clause of the U.S. Constitution (Art. VI, cl. 2), a state law is preempted by federal law based on "express" preemption when Congress has "define[d] explicitly the extent to which its enactments pre-empt state law." *Eng.* v. *Gen. Elec. Co.*, 496 U.S. 72, 78–79 & n.5 (1990).  Because preemption "fundamentally is a question of

congressional intent," when "Congress has made its intent known through explicit statutory language, the courts' task is an easy one." *Id.* at 78–79. Section 230(e)(3) is the CDA's express preemption clause—it expressly preempts contrary State law because it states that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). Under the Supremacy Clause, state laws are also preempted if they "conflict" with federal law— that is, "where it is impossible for a private party to comply with both state and federal requirements[,] or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Eng.*, 496 U.S. at 79.

Here, any "liability" against ICS providers "imposed under" Section 609.771 would be "inconsistent" with Section 230(e)(3), because such "liability" includes being subjected to the criminal, monetary, injunctive, and equitable penalties and relief authorized under Sections 609.771(3) and (4). Section 230 "immunizes providers of interactive computer services against liability arising from content created by third parties," *e.g.*, *E. Coast Test Prep LLC* v. *Allnurses.com, Inc.*, 971 F.3d 747, 752 (8th Cir. 2020), and it must be interpreted to protect ICS providers not only from "ultimate liability," but also from "having to fight costly and protracted legal battles." *Dyroff* v. *Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1099 (9th Cir. 2019); *Nemet Chevrolet, Ltd.* v. *Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

Section 609.771 imposes the State's own content-moderation principles on social media platforms covered by the statute with a looming threat of costly civil and criminal

liability if they do not sufficiently comply.  This is entirely antithetical to the objectives set forth by Congress in enacting Section 230—namely, to encourage *self*-regulation by ICS providers unfettered by the very types of threats of liability that Section 609.771 effects and encourages.  The Fourth, Sixth, Ninth, Tenth, and D.C. Circuits have all so held:

- *Zeran* v. *Am. Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997) (Congress enacted Section 230 to "encourage service providers to ***self-regulate*** the dissemination of offensive material over their services");

- *Bennett* v. *Google, LLC*, 882 F.3d 1163, 1166 (D.C. Cir. 2018) (same);

- *Ben Ezra, Weinstein, & Co., Inc.* v. *Am. Online Inc.*, 206 F.3d 980, 986 (10th Cir. 2000) ("Congress clearly enacted § 230 to forbid the imposition of publisher liability on a service provider for the exercise of its editorial and ***self-regulatory*** functions. . . . [I]n enacting § 230, Congress sought . . . to remove disincentives to ***self-regulation***[.]"); *id.* ("Congress enacted § 230 to give interactive service providers 'a reasonable way to . . . help them ***self-regulate*** themselves without penalty of law[.]'") (quoting 141 Cong. Rec. H8460–01, H8470 (1995));

- *Jones* v. *Dirty World Ent. Recordings LLC*, 755 F.3d 398, 408 (6th Cir. 2014) ("§ 230 encourages interactive computer service providers to ***self-regulate***.");

- *Carafano* v. *Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003) ("Congress enacted" Section 230 "to encourage ***voluntary*** monitoring for offensive or obscene material.").

11

Applying Section 230's broad immunity here would thus comport with "congressional intent." *Eng.*, 496 U.S. at 79; *see also Fields*, 217 F. Supp. 3d at 1129 (explaining that "any policy that requires [ICS] providers to remove or filter particular content undermines" the CDA's goal of "encourag[ing] the unfettered and unregulated development of free speech"). Section 230's preemption of Section 609.7771 is warranted and appropriate as a constitutional and statutory matter.

## II. Section 609.771's Penalty and Relief Provisions Violate and are Preempted by Section 230(c)(1)

Section 609.771 violates and is thus preempted by Section 230(c)(1), because it provides for criminal penalties, monetary penalties, and causes of action for injunctive and equitable relief against X Corp. and other ICS providers based on content posted on their platforms by third-party users of their platforms. *See* §§ 609.771(3), (4). Put another way, Section 609.771 imposes liability on covered platforms by holding them responsible for the characteristics of the content put on their platforms by third parties, as if the platforms were the publishers of that content. It requires platforms to affirmatively identify content that meets the requirements of Section 609.771(2) and remove it from the platform, or else face enforcement under the statute as a "person who disseminates a deep fake or enters into a contract or other agreement to disseminate a deep fake." § 609.771(2)(a).

As the Eighth Circuit has made clear, Section 230(c)(1) bars liability that, as here, stems from an ICS provider's conduct as a "publisher[]," including "deciding whether to publish, withdraw, postpone, or alter content." *Arden*, 614 F.3d at 792 (quoting *Zeran*,

129 F.3d at 330).  It blocks liability when ICS providers "refrain from filtering or censoring the information that third parties created on their sites."  *Id.* at 791; *see also id.* (a provider may not be held liable "for failing to monitor, screen, or delete allegedly defamatory content from its site") (citing *Green* v. *Am. Online*, 318 F.3d 465, 471 (3d Cir. 2003)).

"[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune" under Section 230. *Roommates.com, LLC*, 521 F.3d at 1170–71; *Brittain*, 2019 WL 2423375, at *3.  Liability arising from "selectively remov[ing] content" is "precisely the type of action that [Section 230 of] the CDA was intended to protect."  *Allnurses.com, Inc.*, 307 F. Supp. 3d at 964 n.5; *see Klayman* v. *Zuckerberg*, 753 F.3d 1354, 1359 (D.C. Cir. 2014) ("[T]he very essence of publishing is making the decision whether to print or retract a given piece of content[.]"); *Winter* v. *Facebook, Inc.*, 2021 WL 5446733, at *4 (E.D. Mo. Nov. 22, 2021) (refusing to "hold Facebook and TikTok liable for *not* removing [particular] content/accounts," because the "decision whether to publish, withdraw, postpone, or alter content are traditional editorial functions of a publisher"); *Fields*, 217 F. Supp. 3d at 1125–26 (barring claims that "fault[ed] Twitter for failing to detect and prevent the dissemination of ISIS-related content through the Twitter platform" because such conduct was "fundamental publishing activity and falls under section 230(c)(1)").

That is exactly what Section 609.771 does to the covered platforms here. The statute imposes an untenable burden on platforms to actively monitor their sites for any

content proscribed by Section 609.771(2).  The only way that an ICS provider can avoid liability under the statute is to ensure that there is no such content on its platform.  And that requires each platform to actively vet, monitor, and remove such content, which are classic publishing activities.  Section 609.771 thus fundamentally interferes with a platform's role as a publisher, and directly contravenes Section 230(c)(1)'s directive that ICS providers may not face liability for their decisions to "refrain from filtering or censoring the information that third parties created on their sites."  *Arden*, 614 F.3d at 791; *see also Barnes* v. *Yahoo!, Inc.*, 570 F.3d 1096, 1103 (9th Cir. 2009) ("[R]emoving content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove."), *as amended* (Sept. 28, 2009); *id.* at 1102–03 (finding that no "intellectual gymnastics" were needed to conclude that Yahoo! was entitled to immunity under Section 230(c)(1) from claims concerning its failure to remove an offending profile); *Calise* v. *Meta Platforms, Inc.*, 103 F.4th 732, 744 (9th Cir. 2024) (finding that Meta was immune under Section 230(c)(1) from claims that would require it to "actively vet and evaluate third-party ads" and remove them to "avoid liability").

Eighth Circuit law strongly supports the conclusion that Section 230(c)(1) immunizes covered platforms, such as X, from any liability that would be imposed under Section 609.771.  First, *Arden*, 614 F.3d 785, is instructive.  There, plaintiffs sued InMotion Hosting Inc., an internet service provider, in the Western District of Missouri, for defamation, on account of statements posted on www.ComplaintsBoard.com, a

14

website hosted by InMotion.  The district court dismissed plaintiffs' suit, holding that Section 230(c)(1) "blocks civil liability" against ICS providers for "refrain[ing] from filtering or censoring the information that third parties created on their sites." *Id.* at 791. The Eighth Circuit affirmed, agreeing that Section 230 provides "***broad*** federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Id.*  As long as the ICS provider, as here, does not "originate the material," it is immunized from any liability arising from that material. *Id.*

The Eighth Circuit considered Section 230(c)(1) immunity again, under a similar fact pattern, in *Allnurses.com, Inc.*, 971 F.3d 747.  The defendant, Allnurses.com, Inc., operated a website for nurses and nursing students that allowed registered users to open discussion threads, post comments, and "like" other users' comments. *Id.* at 749.  Test Prep, a test-preparation service, sued Allnurses.com in the District of Minnesota, over allegedly defamatory comments made about Test Prep on the website.  Then-Chief Judge Tunheim granted Allnurses.com's motion for judgment on the pleadings based on Section 230(c)(1) immunity, echoing *Arden* and reiterating that ICS providers may not be held "legally responsible for information that third parties created and developed." *Allnurses.com, Inc.*, 307 F. Supp. 3d at 963 (quoting *Arden*, 614 F.3d at 791).  The district court noted that "selectively remov[ing] content" is "precisely the type of action that the CDA was intended to protect." *Id.* at 964 n.5.

The Eighth Circuit affirmed.  Its analysis focused on whether Test Prep adequately alleged that Allnurses.com was itself "responsible, in whole or in part, for the creation of"

the allegedly defamatory content because, if so, then the claim would not treat Allnurses.com as the "publisher or speaker of any information *provided by another* information content provider." *See Allnurses.com, Inc.*, 971 F.3d at 752; 47 U.S.C. § 230(c)(1). Because Test Prep failed to adequately plead that Allnurses.com was the "information content provider" of the material—i.e., that "Allnurses was wholly or partly responsible for creating or developing" the material—Allnurses.com could not face liability for it. *Allnurses.com, Inc.*, 971 F.3d at 752.

Here, X and other covered platforms would not be "responsible, in whole or in part, for the creation or development," § 230(f)(3), of any "[d]eep fake[s]" proscribed by Section 609.771(2), so they cannot, consistent with Section 230(c)(1), face liability on account of that content. As explained by Judge Montgomery in *Gregerson* v. *Vilana Fin., Inc.*, 2008 WL 451060 (D. Minn. Feb. 15, 2008), "third-party comments posted on" a "website are 'information provided by another information content provider,'" and an ICS provider is "not liable for the third-party comments posted on [its] website"—it is "liable for only *[its] own* comments on [the] website." *Id.* at *9.

This remains true even if the decision not to remove the content created by third parties is protected under the First Amendment. *See, e.g.*, *Geegieh*, 2025 WL 1769766, at *5 (X Corp.'s "moderation practices" enjoy Section 230 immunity *and* are protected under the First Amendment). That principle applies here, and it holds even when a platform specifically decides to "***not*** remov[e]" particular "content/accounts," because the "decision whether to publish, withdraw, postpone, or alter content are traditional editorial

16

functions of a publisher." *Winter*, 2021 WL 5446733, at \*4 (barring gross negligence claims against Facebook and TikTok under Section 230(c)(1)).

Minnesota courts and other district courts in the Eighth Circuit have uniformly applied Section 230(c)(1) to bar the very types of claims and penalties that are authorized under Sections 609.771(3) and (4). *See Faegre & Benson, LLP* v. *Purdy,* 367 F. Supp. 2d 1238, 1249 (D. Minn. 2005) (those that "run web sites on which internet users can post comments, are providers of interactive computer services" and are "immune from defamation or appropriation claims based on content posted by someone else"); *Steele* v. *Mengelkoch*, 2008 WL 2966529, at \*1 (Minn. Ct. App. Aug. 5, 2008) (barring libel claim against Google, stating that "[f]ederal courts have uniformly applied [Section 230(c)(1)] to bar claims brought against [ICS] providers for defamation and other claims arising from the publishing of third-party content"); *M.A. ex rel. P.K.* v. *Vill. Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1050 (E.D. Mo. 2011) ("[S]o long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selecting process."); *S.C.* v. *Dirty World, LLC*, 2012 WL 3335284, at \*4 (W.D. Mo. Mar. 12, 2012) ("[A] third party unilaterally created and submitted the [allegedly defamatory material] without specific instructions or requests from the" ICS provider, which is "precisely the type of situation that warrants CDA immunity."); *PatentWizard, Inc.* v. *Kinko's, Inc.*, 163 F. Supp. 2d 1069, 1071 (D.S.D. 2001) (barring defamation, failure to monitor, and other claims that sought to

"treat [defendant] as a distributor by imposing liability upon [defendant] for its conduct in disseminating [a third-party's] statements," which "is itself prohibited by § 230").

Moreover, district courts have repeatedly held that Section 230 bars claims based on third-party content, despite the fact that the ICS provider exercises its editorial discretion about whether or not to remove the content on its platform. For instance, in *Fields*, 217 F. Supp. 3d 1116, plaintiffs asserted Anti-Terrorism Act claims against Twitter arising out of Twitter's provision of accounts to ISIS. The court explained that plaintiffs' claims "[f]unctionally . . . urge[d] that Twitter should have imposed a blanket ban on pro-ISIS content," and "fault[ed] Twitter for failing to detect and prevent the dissemination of ISIS-related content through the Twitter platform." *Id.* at 1123–25. Section 230(c)(1) thus immunized Twitter because such activity—which boiled down to deciding whether to block content on the platform—concerned Twitter's "conduct as a publisher" and was "fundamental publishing activity [that] falls under section 230(c)(1)." *Id.* at 1124–26.

Likewise, in *Dehen*, 2018 WL 4502336, the court held that Section 230(c)(1) barred fraud, libel, and negligent infliction of emotional distress claims against Twitter over its alleged "delay" in "taking down" certain "offending content." *Id.* at *3–4. The court explained that Twitter's decision-making about whether "to remove the content, and the speed at which it did so, is publisher conduct" that triggers immunity under Section 230. *Id.* at *4. And finally, in *Geegieh*, 2025 WL 1769766, the court similarly held—in dismissing claims concerning X Corp.'s purported failure to disclose the identities of

18

individuals that allegedly defamed the plaintiff—that X Corp.'s "moderation practices" "enjoy § 230 immunity." *Id.* at \*4–5.

\*      \*      \*

The law on Section 230(c)(1) is clear.  It bars nearly all instances of liability that social media platforms face on account of content on their platforms that is created by third parties without assistance or encouragement from the platform.  ICS provider liability arising from content proscribed under Section 609.771, as authorized by Sections 609.771(3) and (4), fits that description precisely and is thus barred under Section 230(c)(1).

## CONCLUSION

The Court should grant Plaintiff X Corp.'s Rule 12(c) motion and enter judgment on the pleadings in favor of X Corp. on its claim that Section 609.771 violates and is thus preempted by 47 U.S.C. § 230(c)(1).

Dated:  August 4, 2025             By: /s/ Joel Kurtzberg

CAHILL GORDON & REINDEL LLP
Joel Kurtzberg (admitted *pro hac vice*, SBN NY
2835007)
Floyd Abrams (admitted *pro hac vice*, SBN NY
1758184)
Jason Rozbruch (admitted *pro hac vice*, SBN
NY 5753637)
32 Old Slip
New York, NY 10005
Phone: 212-701-3120
Facsimile: 212-269-5420
jkurtzberg@cahill.com
fabrams@cahill.com
jrozbruch@cahill.com

Erick G. Kaardal (SBN 229647)
MOHRMAN, KAARDAL & ERICKSON, P.A.
150 S. Fifth St., Ste. 3100
Minneapolis, MN 55402
Phone: 612-746-7724
Facsimile: 612-341-1076
kaardal@mklaw.com