UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| X CORP., | Court File No. 25-cv-1649 (LMP/DLM) |
| Plaintiff, | |
| vs. | **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS ON ITS SECTION 230 CLAIM** |
| KEITH ELLISON, in his official capacity, as Attorney General of Minnesota, | |
| Defendant. | |

## INTRODUCTION

Deepfakes are highly realistic video, audio, and other digital content generated by artificial intelligence. They depict a person doing or saying something they did not do or say. In this case, X challenges Minnesota Statutes Section 609.771, which criminalizes the knowing or reckless dissemination of deepfakes that are intended to injure a candidate or influence an election. X seeks judgment on the pleadings on its Section 230 claim, but X lacks standing, its claims are not ripe, it reads Section 230 too broadly, and the Deepfake Statute is not preempted by Section 230.

## FACTS

In May 2023, a broad, bipartisan coalition in the Minnesota legislature acted to address the harmful effects of deepfakes in elections. *See* 2023 Minn. Laws ch. 58, § 2 (codified at Minn. Stat. § 609.771). The legislature amended the law in May 2024, imposing a stricter mens rea requirement for violations. 2024 Minn. Laws ch. 112, art. 2,

§§ 76-78 (codified at Minn. Stat. § 609.771, subds. 2-4). The amendments also attached political penalties for candidates who disseminate prohibited deepfakes. *Id.* In current form, Minnesota Statute Section 609.771 contains a dissemination and contract provision.

Under the dissemination provision, a person who disseminates a deepfake violates the Deepfake Statute under certain circumstances—if the person knows or acts with reckless disregard about whether the item being disseminated is a deepfake and dissemination is (a) made without the consent of the depicted individual; (b) is made with the intent to injure a candidate or influence the result of an election; and (c) takes place within specific temporal proximity to certain election events. Minn. Stat. § 609.771, subd. 2. Under the contract provision, a person who "enters into a contract or other agreement to disseminate a deep fake" violates the Deepfake Statute under the same circumstances noted above. *Id.*

The limited liability of social media companies under the statute was acknowledged by legislators during the statute's initial passage and subsequent amendment.

> Mr. Chair, Representative Torkelson, I agree with you that these platforms should be held more culpable than they currently are for the content that is being disseminated on them. […] As an aside, there are limitations in what we can do in federal law with regard to this […]

Hearing on H.F. 1370 Before H. Comm. On Elections Finance and Policy, 2023 Leg., 93rd Sess. (statement of Rep. Stephenson).

> The last part is that I think it's really, really important for us to put in and this starts on line 3.15 and goes down to 3.19. That […] social media, newspapers, you know, electronic publications, they're not in violation of this law for putting out political ads that someone might purchase and put out on their airwaves. And I really think that's very important that we pass and put

into law, especially as we head into an election cycle. I would really like it
to be clear that we are not holding […] our news media accountable for the
deepfakes that other people might create[.]"

Hearing on S.F. 3550 Before Sen. Comm. On Elections, 2024 Leg., 93rd Sess. (statement
of Sen. Erin Maye Quade).

Following the passage of Minn. Stat. § 609.711, there is no history of its
enforcement nor is there an outstanding threat of its enforcement against X. Moreover, as
of the filing of this brief, X's terms of service do not call for disseminating deepfakes or
for entering a contract or other agreement to disseminate deepfakes. X instead argues that
by requiring users to agree to its terms of service before using their platform, it would
automatically disseminate or enter into a contract or other agreement to disseminate a
deepfake. (ECF No. 34, at 5.)

But X's terms of service prevent a relationship of this nature. For example, the terms
of service notify users that any risk to the use of X is the user's own. *X Terms of Service*,
X.COM, x.com/en/tos, (last visited August 29, 2025) ("we disclaim all warranties,
responsibility, and liability to you or others to the extent permitted by law"),
https://perma.cc/6QRJ-E589.[1] X's terms of service also emphasize that "[a]ll content" is
"the sole responsibility of the person who originated such content." *Id*. X does not
guarantee it will monitor or control the content posted using its Services and does not take
responsibility for that content. *Id*. Users are only allowed to use X in compliance with the
terms of service and "all applicable laws, rules and regulations," suggesting that a user's

---

[1] The terms of service are also attached as Exhibit 7 to the Complaint. (ECF No. 1-7.)

violation of Minn. Stat. § 609.771 would violate X's terms of service. *Id*. X reserves the right to remove Content that includes impersonation and unlawful conduct. *Id.* Users "may not deceptively share synthetic or manipulated media that are likely to cause harm" or "share inauthentic content on X that may deceive people or lead to harm." *X Rules*, https://help.x.com/en/rules-and-policies/x-rules (last visited Aug. 29, 2025), Declaration of Janine Kimble ("Kimble Decl.") Ex. 1; *X Authenticity*, https://help.x.com/en/rules-and-policies/authenticity (last visited Aug. 29, 2025), Kimble Decl. Ex. 2.[2]

Perhaps the strongest rift between what X's terms of service allow, and the criminal behavior described under Minn. Stat. § 609.771 is its instruction against sending "altered, deceptive or false source identifying information." *X Terms of Service*, X.COM, x.com/en/tos, (last visited August 29, 2025). This directly prohibits any attempt to disseminate an image of an individual appearing to engage "in speech or conduct in which the individual did not engage." *See* Minn. Stat. § 609.771.

## PROCEDURAL BACKGROUND

X filed this lawsuit against Attorney General Keith Ellison on April 23, 2025, challenging Minn. Stat. § 609.771.[3] The Attorney General filed his Answer to the Complaint on May 15, 2025. (ECF No. 16.) The Attorney General moved to stay X's case in its entirety on June 3, 2025. (ECF Nos. 18, 21.) X opposed the Attorney General's motion, on June 17, 2025, though it did not contest the stay as it related to the constitutional

---

[2] X attached the January 2025 version as Exhibit 9 to its Complaint. (ECF No. 1-9.)

[3] X summarizes its claims in its brief. (ECF 34, at 7.)

claims. (ECF No. 28.) Instead, it argued there was no basis to stay its Section 230 claim. (*Id*.)

The Court granted the Attorney General's motion in part and denied in part on July 3, 2025. (ECF No. 29.) The Court permitted X's Section 230 claim to move forward because the Attorney General did not claim any hardship or inequity if the stay was not granted. (ECF No. 29, at 7.) However, the Court's decision included a "compromise solution." (*Id*.) Both parties had 30 days to file a motion for judgment on the pleadings as to the Section 230 claim. (*Id*.) If neither party filed a motion within 30 days of the judgment, the entire case was to be stayed pending the Eighth Circuit's resolution of *Kohls*. (*Id*.) And if X filed a motion for judgment on the pleadings and it was denied, the case would be stayed. (*Id*.)

X moved for judgment on the pleadings on August 5, 2025. (ECF No. 33.) X's Second Cause of Action seeks relief under Section 230 and presents two different theories: immunity and preemption under 47 U.S.C. § 230(c)(1). (Compl. ¶¶ 71 - 83.)

X's meet and confer statement merits note, as it is misleading and does not fairly or accurately represent the parties' discussion. (ECF No. 35.) During the meet and confer call, the undersigned stated that if Defendant's view of the scope of Section 230 was correct, then we believed the Court could decide as a matter of law whether the Deepfake Statute was preempted by Section 230. If, however, the Court interprets the scope of Section 230 differently, Defendant reserved their right to argue discovery would be necessary. Counsel

for Defendant emphasized that the undersigned could not agree that no discovery would be necessary without first reviewing X's briefing about the scope of Section 230.

To the extent X's statement implies Defendant agrees there is no scenario in which discovery would be necessary in this case, it is wrong. And now that X has briefed this motion, it's worth noting that it is unclear from the Complaint whether X is asking for complete immunity for all Deepfake Statute claims; the briefing suggests they may be asking for complete immunity. If, however, X is simply asking for immunity from claims where the *only* alleged involvement by X is that a third party posted a deepfake on X, no discovery would be necessary, and X should lose this motion. As this brief explains, those are the *only* claims barred by Section 230, and under such facts, X cannot be liable under the Deepfake Statute for merely allowing a user to post content that turns out to be a deepfake. The need for discovery depends on the scope of X's ask. If the information properly in front of the Court is insufficient as a matter of law for the Court to rule on the Section 230 claim, then the claim will proceed to discovery, after a stay. (ECF No. 29, at 8.)

## STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The legal standards governing Rule 12(c) motions for judgment on the pleadings are the same as for Rule 12(b)(6) motions to dismiss. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). The Court accepts as true all facts pleaded by the non-moving party and "grant[s] all reasonable

inferences from the pleadings in favor of the non-moving party." *Id.* Judgment on the pleadings is appropriate when the material facts are not in dispute, and the moving party is entitled to judgment as a matter of law. *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000). "While courts generally may not consider materials outside the pleadings in deciding whether to grant a motion for judgment on the pleadings, courts may consider some public records, materials that do not contradict the complaint, or materials that are necessarily embraced by the pleadings." *Saterdalen v. Spencer*, 725 F.3d 838, 841 (8th Cir. 2013).

## ARGUMENT

### I.  X LACKS STANDING.

X lacks standing to challenge Minn. Stat. 609.771 because there is no credible threat of enforcement against it and therefore X has suffered no injury. To demonstrate Article III standing, X bears the burden of showing it has (1) "suffered an injury in fact"; (2) the injury is "fairly . . . trace[able] to the challenged action of the defendant"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560-61 (1992). To establish an injury in a pre-enforcement suit, a plaintiff must show a "credible threat of enforcement." *In re SuperValu, Inc.*, 870 F.3d 763, 769 (8th Cir. 2017) (some internal quotation marks omitted), quoting *Driehaus*, 573 U.S. at 158. X "must demonstrate that 'the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *Id.*

A plaintiff may establish a cognizable pre-enforcement injury where there was either a history of enforcement against others for similar conduct, or an express threat of enforcement against the plaintiff. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 16 (2010). Here, there is no history of enforcement of Minn. Stat. § 609.771 and no threat of enforcement against X. X argues that because it requires users to agree to its terms of service before using their platform, X would automatically disseminate or enter into a contract or other agreement to disseminate a deepfake. (ECF No. 34, at 5.) This is a misreading of the Deepfake Statute, because entering a contract that permits users to post anything permissible by the terms of service on X does not reflect the requisite statutory intent on X's part regarding deepfakes.

What's more, this allegation does not establish a threat of enforcement because it is not particularized. An injury is "particularized" when it "affect[s] the plaintiff in a personal and individual way." *Erickson v. AmeriCold Logistics, LLC*, 311 F. Supp. 3d 1073, 1076 (D. Minn. 2018) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 330 (2016)). Two cases illustrate the point. In *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 166 (2014), the United States Supreme Court held that the combination of two enforcement threats rose to an Article III injury. In *Final Exit Network, Inc. v. Ellison*, the court found that individuals had legal standing because the statute had already been enforced against them in two counties, and the defendants had not disavowed future enforcement. *Final Exit Network, Inc. v. Ellison*, 370 F. Supp. 3d 995, 1011 (D. Minn. 2019). X's situation differs completely

from both of these cases because there is neither a history of enforcement against nor the threat of future enforcement against X, and therefore no particularized injury.

X also fails to show a particularized injury because there is no indication they intend to violate the statute. By merely allowing others to post on its platform, X does not violate the statute. A violation of Minn. Stat. 609.771 requires a that person "knows or acts with reckless disregard about whether the item being disseminated is a deep fake" and requires that the person has "the intent to injure a candidate or influence the result of an election." Minn. Stat. § 609.771, subd. 2(a) & (a)(2). Indeed, the essence of criminal behavior is a conscious act of criminality. *Elonis v. United States*, 575 U.S. 723, 734 (2015) ("With few exceptions, "'wrongdoing must be conscious to be criminal.'""). X does not allege it has the prerequisite mens rea regarding deepfakes third parties post, or any intent to injure a candidate or influence the result of an election. X does not allege it knows in advance a deepfake will be posted, or that it screens all posts. And allowing users to post does not in and of itself reflect an intent on X's part to injure a candidate or influence an election.

Second, X's terms of service preemptively prohibit any use of deepfakes. *See X Terms of Service*, x.com, x.com/en/tos, (last visited August 29, 2025) ("Users are also forbidden from sending "altered, deceptive or false source identifying information."). X's terms also require compliance with laws, like Minn. Stat. 609.771. *See id.* (stating "[u]sers are only allowed to use X in compliance with the terms and "all applicable laws, rules and regulations"). X explicitly distances itself from illegal action by its users by making clear that any violation of law by a user is the responsibility of that user and not X. *Id.* (stating

"all content" is "the sole responsibility of the person who originated such content"). X's terms of service allow users to post content, but do not require—and indeed appear to expressly prohibit—the posting of deepfakes. X does not allege it enters contracts *to disseminate* deepfakes.

X alleges—and the Defendant denies—that the Attorney General has animus towards X. (Compl. ¶ 20; Answer (ECF No. 16) ¶ 20.) The Court cannot accept this as true for purposes of a motion brought *by* X. The Court can, however, look at the video X cites. In the video, the Attorney General is discussing DOGE and possible invasion of privacy; he said "I haven't done the legal research on a criminal charge I've done a lot on civil but . . . there are all kinds of laws . . . governing how private data is used." (*See* ECF No. 1-5, at 5 (9:39-9:48)[4]; *see also* Compl. ¶ 20 n.8 (containing video citation).) The statements about lawsuits were not about X and were not about the Deepfake Statute and do not demonstrate a threat of enforcement of the Deepfake Statute against X. (*See* ECF No. 1-5, at 5 (4:39-5:17).)

X has no standing under Section 230, therefore its motion for a judgment on the pleadings should be denied.

## II.    X'S SECTION 230 CLAIMS ARE NOT RIPE.

X's claims under Section 230 are unripe. The Attorney General has not commenced any claim under the Deepfake Law against X, civil or criminal, and X does not allege the

---

[4] Pincites in ECF documents are to the ECF page number. For example, the first sentence of the Introduction of X's brief would be cited as ECF No. 34, at 6.

existence of any such action in its complaint. (*See generally* ECF No. 1.) Thus, there is no "cause of action" from which X currently needs immunity or the ability to argue that the Deepfake Statute is preempted. 47 U.S.C. § 230(e)(3). As a result, X's Section 230 claims fail as a matter of law.[5]

Ripeness is closely related to standing and mootness. This doctrine consists of jurisdictional as well as prudential requirements. *Iowa League of Cities v. EPA*, 711 F.3d 844, 867 (8th Cir. 2013). In the First Amendment context, the jurisdictional aspect of ripeness merges with standing. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014). But the prudential aspect of ripeness merits independent consideration. *See Iowa League of Cities*, 711 F.3d at 867.

From a prudential perspective, ripeness is "peculiarly a question of timing." *Id.* The party seeking review must show (1) the fitness of its issues for judicial decision; and (2) the hardship of withholding the same. *Id.*; *Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1038-39 (8th Cir. 2000). As to the first of these requirements, issues are unfit for judicial decision when adjudication would rest upon "contingent future events that may not occur as anticipated." *Parrish v. Dayton*, 761 F.3d 873, 875-76 (8th Cir. 2014); *Sch. of the Ozarks, Inc. v. Biden*, 41 F.4th 992, 998 (8th Cir. 2022) ("A case is fit for judicial decision when it would not benefit from further factual development . . . ."). As to the second requirement, hardship refers to "traditional damages and behavior

---

[5] X does not plead and does not identify in its brief the cause of action under which it proceeds for its Section 230 claim.

modification that could result in the absence of judicial review." *Neb. Pub. Power*, 234 F.3d at 1038.

### A.    X's Section 230 claims are not fit for judicial review.

X's claims are not yet fit for judicial review. X asks the Court to declare that it has immunity from an unidentified cause of action that has not yet been alleged against X, and that any such causes of action are preempted by Section 230. These inchoate causes of action are precisely the sort of "contingent future events that may not occur as anticipated" and that make X's claims ill-suited for judicial resolution at this time. *Parrish*, 761 F.3d at 875-76; *see Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1026-27 (E.D. Cal. 2017) (citing *Google, Inc. v. Hood*, 822 F.3d 212, 225-26 (5th Cir. 2016)) (concluding anticipatory immunity claim under Section 230 was unripe).

For example, the Court does not yet know (and neither do the parties) whether any action the Attorney General might bring will be civil or criminal. *See* Minn. Stat. § 609.771, subd. 2 (providing for criminal liability), subd. 4 (providing for civil liability). Nor does the Court know what conduct by X might prompt an action under the Deepfake Statute. As discussed below, the nature of an interactive computer service provider's conduct determines whether Section 230 is even applicable. (*See infra*, at 14, 15-21.) If the Court proceeds to consider X's claim at this time, it risks adjudicating the intersection between the Deepfake Statute and Section 230 even though enforcement actions by the Attorney General might not ever implicate Section 230 or its immunity provision. X's Section 230 claims thus stand to benefit from "further factual development." *Iowa League of Cities*,

711 F.3d at 867. The Court should avoid such speculative terrain and instead conclude that these claims are not fit for judicial decision at this time.

**B.    No harm will flow from treating X's Section 230 claims as unripe.**

Nor will postponing X's Section 230 claims cause any hardship. X has and will have every right to raise its immunity and preemption defenses should an enforcement action arise in the future. *See Neb. Pub. Power*, 234 F.3d at 1038; *Publius*, 237 F. Supp. 3d at 1026-27 ("[I]f the attorney general did file such a suit, Google could raise its claimed § 230 immunity as a defense." (quoting *Hood*, 822 F. F.3d at 227 n.12)).

For this and the reasons stated above, X fails both requirements of the prudential ripeness inquiry. Entertaining its Section 230 claims is nothing more than a recipe for the Court to entangle itself in an abstract disagreement that is neither "definite" nor "concrete." *Neb. Pub. Power*, 234 F.3d at 1037-38. The Court should instead conclude that X's Section 230 claims are unripe and, accordingly, deny X's motion.

*** 

All told, Section 230 typically serves as a shield against suits and liability, not a sword that entitles litigants to enmesh themselves in litigation. Permitting X to use Section 230 as a basis to pursue claims in federal court would turn the purpose of this statute on its head. The Court should reject X's attempt to repurpose Section 230 and, accordingly, deny its motion in full.

**III.    SECTION 230 DOES NOT PREEMPT THE DEEPFAKE STATUTE.**

13

Section 230(c)(1) preempts a specific type of claim: a claim that seeks to hold an interactive computer service liable as a publisher or speaker for information provided by a third party. No more. The Deepfake Statute does not seek to hold X liable for information provided by third parties because such claims unambiguously require intent. And even if the Deepfake Statute were ambiguous, the legislative history shows there was no legislative intent to run afoul of Section 230. X's intimation that every single claim against X arising under the Deepfake Statute would be preempted by Section 230 is inconsistent with controlling Eighth Circuit precedent in *Johnson v. Arden*, 614 F.3d 785 (8th Cir. 2010), and is at odds with the First Amendment (first-party speech) protections recognized by the Supreme Court in *Moody v. NetChoice*, 603 U.S. 707 (2024). Additionally, Section 230 acknowledges that states may enforce state laws that are "consistent" with Section 230. 47 U.S.C. § 230(e)(3). The Court should thus hold that Section 230 does not preempt the Deepfake Statute.

### A.     Preemption law.

Congress can preempt state laws in one of three ways: (a) expressly through statutory language; (b) implicitly where a state law conflicts with or stands as an obstacle to federal law; or (c) implicitly when it occupies a legislative field and leaves no room for state law. *WinRed, Inc. v. Ellison*, 59 F.4th 934, 941 (8th Cir. 2023) (quoting *Weber v. Heaney*, 995 F.2d 872, 875 (8th Cir. 1993)). X alleges express preemption. (Compl. ¶ 73; ECF No. 34, at 14-15 (arguing "Section 230(e)(3) is the [Communication Decency Act's] express preemption clause".) Whether federal law preempts state law is an issue of

14

statutory intent, which "focuses on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *WinRed*, 59 F.4th at 942 (cleaned up); *see also Johnson v. Arden*, 614 F.3d 785, 790-91 (8th Cir. 2010) (engaging in statutory interpretation to determine whether Section 230 barred claims against website owners for allegedly defamatory statements posted on an internet discussion board).

**B.    Section 230 preempts only state laws that treat an interactive computer service as the publisher or speaker of information provided by third party.**

Section 230 was enacted in response to a state court decision holding that a company could be liable for any defamatory statements hosted on its electronic bulletin boards. *Anderson v. TikTok*, 116 F.4th 180, 189 (3d Cir. 2024) (Matey, J., concurring in part). Section 230(c)(1) provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). It expressly preempts "inconsistent" state laws. *Id.* § 230(e)(3). By passing this preemption provision, Congress "'established a general rule that providers of interactive computer services are liable only for speech that is properly attributable to them.'" *Johnson*, 614 F.3d at 791 (*quoting Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009)). To put it another way, Section 230 bars plaintiffs from "holding ISPs legally responsible for information that third parties created and developed." *Id.*

Another goal of the CDA was to "encourage service providers to self-regulate the dissemination of offensive material over their services," by granting them immunity from

material published by third parties regardless of whether the interactive computer service provider took an active role in regulating the content. *Zeran*, 129 F.3d at 331. In other words, "§ 230 forbids the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions." *Id.*; *see also Winter v. Facebook, Inc.*, No. 4:21-CV-01046 JAR, 2021 WL 5446733, at *3 (E.D. Mo. Nov. 22, 2021).

In *Johnson*, for example, plaintiffs brought a defamation suit for statements posted on an internet discussion board. 614 F.3d at 787. InMotion Hosting, Inc., raised a Section 230 defense and the district court dismissed the claims against it. The Eighth Circuit affirmed. The theory of liability in *Johnson* plainly fell within Section 230.

> Counts I, II and III allege that all six defendants conspired to use www.ComplaintsBoard.com to post false statements about the Johnsons, including statements that the Johnsons kill cats, the Johnsons "rip off" cat breeders, the Johnsons steal kittens, the Johnsons' cats and kittens are infected, and the Johnsons are con artists. The Johnsons assert that they requested all defendants to remove the statements but that the statements were not removed for more than 48 hours.

*Id.* at 788. InMotion was an interactive computer service, whose only role was hosting the website containing the internet discussions board. *Id.* at 789. And it was undisputed that InMotion "did not originate the material" the plaintiffs alleged were defamatory. *Id.* 791. Where the only allegation against InMotion was that it did not remove—or did not remove quickly enough—material posted by third parties, plaintiffs were seeking to hold InMotion liable as a publisher for the allegedly defamatory material, and the claims against InMotion were barred by Section 230. *Id.* at 792.

The theory of liability in *East Coast Test Prep LLC v. Allnurses.com, Inc.*, 971 F.3d 747, 752 (8th Cir. 2020), was much the same. Allnurses operated a website that allowed registered users to open discussion threads, post comments, and like others' comments. *Id.* at 749. After certain unfavorable comments were posted about Test Prep, Test Prep sued several defendants, including Allnurses, alleging trade libel and other claims. *Id.* As to the libel claim, the plaintiff had not alleged the posts were attributable to Allnurses, as opposed to the posters themselves. *Id.* at 752. The claims were barred by Section 230 and the Court affirmed dismissal. *Id.* at 752, 756.

In yet another example, in *Winter v. Facebook*, the plaintiffs sought to hold Facebook and TikTok liable for refusing to remove posts by third parties. *Winter*, 2021 WL 5446733, at \*1. Plaintiffs alleged a defendant and others harassed plaintiff on her social media accounts; Facebook and TikTok failed to take down false posts and/or posts containing plaintiffs' personal identifying information for the purposes of stalking and harassment; and plaintiffs sustained damages. *Id.* There was no dispute that Facebook and TikTok were interactive computer services. Likewise, there was no dispute that neither Facebook nor TikTok created the posts—third parties did. Finally, the court concluded "Plaintiffs are clearly seeking to treat Facebook and TikTok as publishers." *Id.* at \*4. Plaintiffs argued that because the interactive computer services failed to follow their community standards, they had acted in bad faith and had no protection under Section 230(c)(2). *Id.* at \*5. The court rejected that argument, observing that the interactive computer services were relying on Section 230(c)(1), which does not contain a good faith

requirement. *Id.* (citing *E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 307 F. Supp. 3d 952, 964 (D. Minn. 2018), aff'd, 971 F.3d 747 (8th Cir. 2020)). Here, too, X is relying on Section 230(c)(1).

But Section 230 is not a get-out-of-jail-free card for *all* claims against interactive computer services. Posts *by* X are not protected. *Nemet Chevrolet, Ltd.*, 591 F.3d at 254 ("Congress thus established a general rule that providers of interactive computer services are liable only for speech that is properly attributable to them.") (quoted in *Johnson*, 614 F.3d at 791); *Winter*, 2021 WL 5446733, at *4 ("Facebook and TikTok would not be immune from suit for content they themselves created and published directly."); *Faegre & Benson, LLP v. Purdy*, 367 F. Supp. 2d 1238, 1249 (D. Minn. 2005) (Section 230 does not immunize web site operators when they themselves post the defamatory comments). That flows directly from the language in Section 230. Holding X liable for content it creates and publishes directly is not holding X liable for third-party content. X agrees it is liable for its own posts. (*See also* ECF No. 34, at 21.)

In *Johnson*, the Eighth Circuit expressly left open the possibility that an interactive computer service could be liable for intentionally designing a system to facilitate illegal acts. 614 F.3d at 792; *see also id.* at 791 (citing *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162–64 (9th Cir. 2008) (Section 230 immunity "did not apply to website that was designed to force subscribers to divulge protected characteristics)). The Eighth Circuit distinguished *Chicago Lawyers' Committee for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671-72 (7th Cir. 2008), which

concluded an interactive computer service could not be liable for allowing third parties to place ads on its website that violate the Fair Housing Act, *if* the interactive computer service did not induce the third parties to place discriminatory ads. In *Johnson*, "[t]he record contain[ed] no evidence that InMotion designed its website to be a portal for defamatory material or do anything to induce defamatory postings." 614 F.3d at 792. By the Eighth Circuit's reasoning, then, if a party sues an interactive computer service for *designing* a website to be a *portal* for defamatory material, or seeks to hold an interactive computer service liable for *inducing* defamatory postings, Section 230 is not implicated and does not bar liability.[6] Of course, because *X* is bringing this lawsuit, and is not seeking to invoke Section 230 defensively, there is no legal theory about X's behavior that this Court can analyze; again, that makes this posture a tough match for a Section 230 analysis. (*See supra*, at 12-13.)

The Ninth and Third Circuits have held similarly. In *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 738 (9th Cir. 2024), the Ninth Circuit refused to dismiss a contract claim

---

[6] At first glance, it may be appealing for X to suggest this discussion by the Court in *Johnson* is irrelevant. Indeed, there is no allegation in the Complaint that X designs its website to be a portal for deepfakes or that it did anything to induce deepfakes. Why would X make such allegations? There is likewise no allegation that X promotes deepfakes. *See Anderson v. TikTok, Inc.*, 116 F.4th 180, 184 (3d Cir. 2024) (concluding that platform's algorithm that decided whether third-party speech would be included or excluded from compilations of users' content and then organized and presented the items was first-party speech, and therefore fell outside of platform's immunity under Section 230). Again, why would X make such allegations? Nevertheless, it appears X may be seeking a wholesale exemption from any application of the Deepfake Statute to it, under any theory or set of facts. That stretches Section 230 too far. (*See* ECF No. 34, at 24 (Section 230 bars "*nearly all* instances of liability").)

against Meta under Section 230. Because any duty arising from a promise to moderate third-party advertisements is unrelated to Meta's publisher status, Section 230 did not bar plaintiffs' contract claims. *Id.* at 743; *see also Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1107 (9th Cir. 2009), as amended (Sept. 28, 2009) (concluding promissory estoppel clam is not barred by Section 230 because "[c]ontract liability here would come not from Yahoo's publishing conduct, but from Yahoo's manifest intention to be legally obligated to do something, which happens to be removal of material from publication").[7]

*NetChoice* is instructive regarding the difference between speech by a third party (where an interactive computer service is protected by Section 230) and first-party speech by an interactive computer service (where an interactive computer service's speech is protected by the First Amendment). *NetChoice* did not analyze Section 230 and dealt only with the latter: first-party speech. 603 U.S. at 718 (a platform "compiling the third-party speech it wants in the way it wants, and thus [] offering the expressive product that most reflects its own views and priorities" is protected by the First Amendment).

The Third Circuit discussed the impact of *NetChoice* on Section 230 claims in *Anderson*. The Third Circuit observed, "[g]iven the Supreme Court's observations that platforms engage in protected first-party speech under the First Amendment when they curate compilations of others' content via their expressive algorithms, it follows that doing so amounts to first-party speech under § 230, too." *Anderson*, 116 F.4th at 184. It also

---

[7] *Contra Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 22 (1st Cir. 2016) (holding Section 230 barred claims even where the allegations were that the website was specifically designed to facilitate sex trafficking).

concluded that TikTok's algorithm that decided whether third-party speech would be included or excluded from *compilations* presented on users' unique feed was first-party speech, so as to fall outside of platform's immunity under Section 230.[8] *Id.*; *see also Doe v. MG Freesites, LTD*, 2024 WL 5339485, at *10, 11 (N.D. Ala. Dec. 19. 2024) (denying defendants' motion for summary judgment, concluding Section 230 did not bar lawsuit alleging defendants recommended search terms and playlists that directed users to illegal, harmful content), *motion to certify appeal denied sub nom. Doe # 1 v. MG Freesites, LTD*, No. 7:21-CV-00220-RDP, 2025 WL 1314179 (N.D. Ala. May 6, 2025); *Huckabee v. Meta Platforms, Inc.*, 2024 WL 4817657, at *4 (D. Del. Nov. 18, 2024) (Meta's speech was first-party speech not protected by Section 230 where plaintiff alleged Meta decided which posts appeared at the top of users' feeds).

The weight of authority is that Section 230 does not always preempt. X has not proven as a matter of law that it is entitled to complete preemption because there are circumstances under which X can be liable under the Deepfake Statute without running

---

[8] *Anderson* distinguished *Johnson*. 116 F.4th at 184 n.13. But *Johnson* was not about algorithms. The Eighth Circuit has not addressed the application of Section 230 to algorithms. This Court should not conclude on a motion for judgment on the pleadings that that Section 230 bars all claims under the Deepfake Statute premised on X's algorithms, as the record is silent about any activity of X to promote/recommend deepfakes and it is therefore speculative. Discovery would be necessary to ascertain the nature and application of X's algorithms regarding promoting and recommending content. For example, does X employ algorithms to identify deepfakes related to elections – all candidates or some? – and promote them?

afoul of Section 230. This reading is faithful to Section 230, is consistent with decisions in the Eighth Circuit, and is warranted as deepfakes proliferate and undermine democracy.[9]

C.    **Section 230 does not preempt the Deepfake Statute**.

With the proper interpretation of Section 230 in mind, to determine whether § 230 immunity applies, a court must determine whether: (1) the defendant is a "provider . . . of an interactive computer service"; (2) the information for which the plaintiff seeks to hold defendant liable is "information provided by another information content provider"; and (3) whether the plaintiff's claims seek to treat the defendant as a "publisher or speaker" of that information. § 230(c)(1); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014).[10] For purposes of this motion, Defendant agrees X is an interactive computer service.

---

[9] Amy Klobuchar, *What I Didn't Say About Sydney Sweeney*, N.Y. Times, Aug. 20, 2025 (op-ed) (discussing a deepfake video depicting the senator making lewd comments during a Senate Judiciary subcommittee hearing and reports from July that an imposter used AI to pretend to be Secretary of State Marco Rubio, and contacted multiple foreign ministers); Steven Lee Myers & Stuart A. Thompson, *Advanced AI starting to wear down democracy*, N.Y. Times, *reprinted in* Minnesota Star Tribune, June 29, 2025, at A6 (according to officials and experts, generative AI has "begun to have an impact on election results" and citing an example in Romania where AI tainted the first round of last year's presidential election; the court nullified the result).

[10] Although the Eighth Circuit has not articulated this as a three-part test, this test corresponds to the language in Section 230 and how the Eighth Circuit analyzed the issue in *Johnson*. The Ninth Circuit employs a similar three-part test. *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–01 (9th Cir. 2009), *as amended* (Sept. 28, 2009) ("[S]ubsection (c)(1) only protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider.").

Defendant will analyze preemption under two of the deepfake provisions: (1) **dissemination** and (2) **contract** to disseminate.[11]

First, X's preemption claim premised on the **dissemination** provision fails because the person must "know[] or act[] with reckless disregard about whether the item being disseminated is a deep fake," and must have the "intent to injure a candidate or influence the result of an election." Minn. Stat. § 609.771, subd. 2(a) & 2(a)(2). Knowledge means "the actor believes that the specified fact exists." Minn. Stat. § 609.02, subd. 9(2). "With intent to" means the actor has a purpose to do a particular thing or cause a specific result, or believes the act will cause the result. *Id.*, subd. 9(4). None of these situations can arise where X merely allows a user to post a deepfake. X does not know in advance whether a user will post a deepfake, and X does not screen every post before it is available to the public. And X's business model of merely allowing users to post does not reflect an intent on X's part to injure a candidate or influence an election. As noted above, actions taken by X to induce the creation of deepfakes or promote them are not protected by Section 230; X hasn't even alleged that it does so. X makes no allegation that it knowingly (or with reckless disregard) disseminates deepfakes or intends to injure a candidate or influence an election. (*See* Compl. ¶ 8 (alleging—wrongly—that X would be liable for "merely having [certain] pictures displayed on its platform" within the timeframes set forth in the Deepfake Statute).)

---

[11] X argues it will be liable under both provisions unless it affirmatively identifies deepfakes and removes them. (ECF No. 34, at 17.)

Second, X's preemption claim premised on the **contract** provision fails for several reasons. First, holding X liable for entering a contract is *not* holding X liable as a publisher or speaker. Contract-based claims are not barred by Section 230. *See Calise*, 103 F.4th at 738. Second, there are no allegations that X enters into contracts *to disseminate* deepfakes. X's terms of service allow users to create a variety of content. To put it another way, a user has not *breached* the terms of the user agreement if a user *does not* post a deepfake. Indeed, the terms of service state that users are not allowed to post deepfakes. (*See supra*, at 3-4.) X's theory would mean a landlord entered a contract for a tenant *to engage* in unlawful conduct if—in fact—the tenant engaged in unlawful conduct. But that makes no sense. If, for example, a property owner entered a contract with a third party allowing that third party to operate a lawful business on the property, the landlord did not enter a contract *for* the person to operate a front for laundering money. X's terms of service prohibit the posting of unlawful deepfakes and prohibit users from posting content that violates the law; it makes no sense to call that a contract *to disseminate* illegal deepfakes. Third, even under the contract provision, the person must "know[] or act[] with reckless disregard about whether the item being disseminated is a deep fake" which does not apply to the facts X has alleged.

As to X's Section 230 claim more generally, the legislative history is clear that the Deepfake Statute was not intended to proscribe conduct permitted by Section 230. *See* 2023 Minn. Laws ch. 58, § 2; *see id.*, § 1 ("This section does not alter or amend the liabilities and protections granted by United States Code, title 47, section 230, and shall be construed

in a manner consistent with federal law."); *id.* § 3 ("Nothing in this section shall be construed to impose liability upon the following entities solely as a result of content or information provided by another person: (1) an interactive computer service as defined in United States Code, title 47, section 230, paragraph (f), clause (2)). As the statutes were considered and passed at the same time as Section 2 (the Deepfake Statute), it is clear the legislature did not intend to hold social media companies liable in a manner inconsistent with Section 230. Comments by legislators, *supra*, at 2-3, likewise reflect no intent to evade Section 230.[12]

### D.    X argues express preemption only.

A final note. X pleads express preemption in its Complaint. (Compl. ¶¶ 72-73.)[13] And although X refers to express *and* conflict preemption in its brief, it makes *only* an express preemption argument. (ECF No. 34, at 14-17.) Plaintiff's single sentence that the deep-fake statute conflicts with Section 230 is not a sufficient argument, so any conflict-

---

[12] Although X claims that to avoid liability under the Deepfake Statute it would need to "actively monitor for, detect, and delete content posted by third parties on their platforms that is proscribed by Section 609.771(2)", (*see* ECF No. 34, at 6), in fact all that it would need to do avoid liability is refrain from (1) disseminating material "with the intent to injure a candidate or influence the result of an election" and (2) entering into agreements to disseminate deepfakes.

[13] X uses the phrase "conflicts with" in Paragraph 72, but the only reasonable reading of the Complaint is that it is an express preemption claim. Section 230(c)(1) interacts with the express preemption provision in Section 230(e)(3) because the latter states "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." Thus, the Court must read a different part of the statute to construe the express preemption provision in Section 230(e)(3). Further, X doesn't explain how the Deepfake Statute conflicts with Section 230(c)(1) in a manner that is different than its argument that it is expressly preempted.

preemption theory is waived. (ECF No. 34, at 14 ("Section 609.771 directly conflicts with"); *Any & All Radio Station Transmission Equip.*, 207 F.3d at 462 (moving party must "clearly establish[] that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law").)

In any event, Plaintiff's conflict-preemption theory would likewise fail. When a statute has an express preemption provision, and the law is not preempted, the court should infer there is no conflict preemption. *WinRed*, 59 F.4th at 944. Conflict preemption voids state laws when (1) "compliance with both federal and state regulations is a physical impossibility," or (2) "the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona v. United States*, 567 U.S. 387, 399 (2012) (quotation omitted). Here, there is no impossibility, as Section 230 does not prescribe any conduct. Section 230 does not require X to violate the Deepfake Statute. *See WinRed*, 59 F.4th at 944. And there is no obstacle because the statute does not hold X liable when the only connection X has is that a user posted a deepfake. *See supra*, at 23-25.

## CONCLUSION

For the reasons stated herein, Attorney General Ellison respectfully asks that the Court deny X's motion for judgment on the pleadings.

Dated: August 29, 2025                 Respectfully,

                                       KEITH ELLISON
                                       Attorney General
                                       State of Minnesota

                                       s/ Janine Kimble
                                       PETER FARRELL (#0393071)
                                       Deputy Solicitor General
                                       JANINE KIMBLE (#0392032)
                                       MADELEINE DEMEULES (#0402648)
                                       IAN TAYLOR, JR. (#0401548)
                                       Assistant Attorneys General

                                       445 Minnesota Street, Suite 600
                                       St. Paul, Minnesota 55101-2131
                                       (651) 757-1424 (Voice)
                                       (651) 282-5832 (Fax)
                                       Peter.Farrell@ag.state.mn.us
                                       Janine.Kimble@ag.state.mn.us
                                       Madeleine.DeMeules@ag.state.mn.us
                                       Ian.Taylor@ag.state.mn.us

                                       ATTORNEYS FOR DEFENDANT

|#6157494-v3