**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

X CORP.,

               Plaintiff,

v.

KEITH ELLISON, in his official capacity,
as Attorney General of Minnesota

               Defendant.

Civil No. 25-cv-1649 (LMP/DLM)

**REPLY MEMORANDUM OF
LAW IN FURTHER SUPPORT OF
X CORP.'S MOTION FOR
JUDGMENT ON THE
PLEADINGS ON ITS SECTION
230 CLAIM**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

ARGUMENT.................................................................................................................... 5

I.    Section 230 Protects Plaintiff From the Very Harm Imposed on it by Section 609.771............................................................................................................... 5

II.   X Corp. Has Standing, Its Section 230 Claim Is Ripe, And It Will Suffer Irreparable Harm Absent Judicial Review ...................................................... 8

      a.    X Corp. Has Standing..................................................................................... 8

      b.    X Corp.'s Section 230 Claim is Ripe .......................................................... 13

      c.    X Corp. Will Suffer Irreparable Harm Absent Judicial Review ................. 19

III.  Section 609.771's Penalty and Relief Provisions Violate and are Preempted by Section 230(c)(1) and (e)(3)............................................................................ 20

CONCLUSION ............................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*281 Care Comm.* v. *Arneson*,
   638 F.3d 621 (8th Cir. 2011) ..................................................................................... 12

*Alverson* v. *Brown Cnty.*,
   2023 WL 3764958 (D.S.D. June 1, 2023) ................................................................... 20

*Babbitt* v. *United Farm Workers Nat. Union*,
   442 U.S. 289 (1979) ..................................................................................................... 8

*Backpage.com, LLC* v. *Cooper*,
   939 F. Supp. 2d 805 (M.D. Tenn. 2013) ................................................................. 9, 19

*Backpage.com, LLC* v. *McKenna*,
   881 F. Supp. 2d 1262 (W.D. Wash. 2012) .................................................... 12, 16n, 19

*Barnes* v. *Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009), *as amended* (Sept. 28, 2009) ................................ 23, 24

*Ben Ezra, Weinstein, & Co., Inc.* v. *Am. Online Inc.*,
   206 F.3d 980 (10th Cir. 2000) ..................................................................................... 7n

*Calise* v. *Meta Platforms, Inc.*,
   103 F.4th 732 (9th Cir. 2024) ............................................................................... 22, 23

*Carafano* v. *Metrosplash.com, Inc.*,
   339 F.3d 1119 (9th Cir. 2003) ..................................................................................... 7n

*E. Coast Test Prep LLC* v. *Allnurses.com, Inc.*,
   971 F.3d 747 (8th Cir. 2020) ....................................................................................... 24

*Google, Inc.* v. *Hood*,
   822 F.3d 212 (5th Cir. 2016) ................................................................................. 17, 18

*Gregerson* v. *Vilana Fin., Inc.*,
   2008 WL 451060 (D. Minn. Feb. 15, 2008) ........................................................ 15n, 21

*Iowa League of Cities* v. *E.P.A.*,
   711 F.3d 844 (8th Cir. 2013) ................................................................................. 13, 19

*Johnson* v. *Arden*,
  2009 WL 10672018 (W.D. Mo. June 8, 2009) ............................................................ 14

*Johnson* v. *Arden*,
  614 F.3d 785 (8th Cir. 2010) ................................................................ 4, 14, 15, 17, 21

*Jones* v. *Dirty World Ent. Recordings LLC*,
  755 F.3d 398 (6th Cir. 2014) ................................................................ 6, 7, 9, 19, 22

*Jones* v. *Jegley*,
  947 F.3d 1100 (8th Cir. 2020) ........................................................................................ 9

*Klayman* v. *Zuckerberg*,
  753 F.3d 1354 (D.C. Cir. 2014) ................................................................................... 7n

*M.A. ex rel. P.K.* v. *Vill. Voice Media Holdings, LLC*,
  809 F. Supp. 2d 1041 (E.D. Mo. 2011) ........................................................................ 7n

*Media Matters for Am.* v. *Paxton*,
  732 F. Supp. 3d 1 (D.D.C. 2024), *aff'd*, 138 F.4th 563 (D.C. Cir. 2025) .................... 18

*Publius* v. *Boyer-Vine*,
  237 F. Supp. 3d 997 (E.D. Cal. 2017) .......................................................................... 18

*Religious Sisters of Mercy* v. *Becerra*,
  55 F.4th 583 (8th Cir. 2022) ..................................................................................... 8, 9

*Rodgers* v. *Bryant*,
  942 F.3d 451 (8th Cir. 2019) ................................................................................. 15, 20

*Roth* v. *Austin*,
  619 F. Supp. 3d 928 (D. Neb. 2022) ............................................................................ 16

*Sch. of the Ozarks, Inc.* v. *Biden*,
  41 F.4th 992 (8th Cir. 2022) ......................................................................................... 13

*United Food & Com. Workers Int'l Union, AFL-CIO, CLC* v. *IBP, Inc.*,
  857 F.2d 422 (8th Cir. 1988) .......................................................................................... 8

*Universal Commc'n Sys., Inc.* v. *Lycos, Inc.*,
  478 F.3d 413 (1st Cir. 2007) ........................................................................................ 15n

*Virginia* v. *Am. Booksellers Ass'n*,
   484 U.S. 383 (1988) ..................................................................................................... 12

*Zeran* v. *Am. Online, Inc.*,
   958 F. Supp. 1124 (E.D. Va. 1997) ............................................................................ 7n

*Zeran* v. *Am. Online, Inc.*,
   129 F.3d 327 (4th Cir. 1997) ...............................................................................*passim*

**Statutes**

47 U.S.C. §230 ...........................................................................................................*passim*

Minn. Stat. §609.771 ..................................................................................................*passim*

Cal. Elec. Code §§20510–20520 .................................................................................. 1, 2n

## INTRODUCTION

On August 20, 2025—after Plaintiff X Corp.'s August 4, 2025 submission of its opening memorandum of law supporting this Motion (ECF 34) ("Br.")—Judge John A. Mendez of the U.S. District Court for the Eastern District of California judicially declared that a California "deepfake" law very similar to the law at issue here, California Assembly Bill ("AB") 2655,[1] violates and is preempted by 47 U.S.C. §230(c)(1) and §230(e)(3), and permanently enjoined its enforcement as to X Corp.[2]

*Kohls* is highly persuasive authority on the merits question raised by this Motion and supports a ruling in X Corp.'s favor because Minnesota's Section 609.771 and California's AB 2655 are substantively similar statutes. Section 609.771 regulates deceptive content about political candidates produced by "technical means"—i.e., "[d]eep fake[s]" under §609.771(1)(c). AB 2655 similarly regulated "digitally created or modified" deceptive content about political candidates"—i.e., "[m]aterially deceptive content" under Cal. Elec. Code §20512(i). Both laws generally apply only around the

---

[1] Sections 20510–20520 of the California Election Code.

[2] Judge Mendez granted summary judgment to X Corp. without issuing a written opinion but provided a detailed opinion from the bench. *See* **Ex. 1** to Declaration of Joel Kurtzberg, dated September 26, 2025 (Order and Final Judgment and Permanent Injunction as to AB 2655, *Kohls* v. *Bonta*, No. 2:24-cv-02527-JAM-CKD (E.D. Cal. Aug. 20, 2025), ECF 98) ("*Kohls* Order") at 2–3. The court did not reach X Corp.'s First Amendment claim and granted summary judgment to X Corp. solely on the basis of Section 230, "for the reasons stated on the record during oral argument on August 5, 2025." *Id.* at 1. The August 5, 2025 oral argument transcript (ECF 105) ("*Kohls* Tr.") is attached as **Ex. 2** to the Kurtzberg Declaration. The court's order as to AB 2655 is on pages 29–40 of the transcript.

time of an election[3] and have a mens rea requirement that limits enforcement to situations in which the party acts with "know[ledge]" or "reckless disregard" of the truth.[4]  Finally, both statutes (1) prohibit social media platforms like X from hosting deceptive, technically produced content about candidates and (2) authorize penalties and lawsuits (from a vast roster of politically motivated actors beyond the Attorneys General of each state) to enforce the removal of that content and penalize platforms that don't moderate it to the satisfaction of the State.[5]

Section 609.771 violates and is preempted by Section 230(c)(1) and (e)(3) for all of the same reasons that AB 2655 violates and is preempted by Section 230(c)(1) and (e)(3).  The "conduct" that each statute "regulate[s]" is "traditional publishing activity that Section 230 immunizes." *Kohls* Tr. 34.  Both statutory "regime[s]" are "antithetical to the objectives set forth by Congress in enacting Section 230, which were to encourage self-regulation and self-moderation unfettered by the types of ***threats*** of liability that" the statutes "effect[] and encourage[]." *Id.* 38.[6]

---

[3] *See* §609.771(2)(a)(3); Cal. Elec. Code §§20513(e), 20514(e).

[4] §609.771(2)(a); Cal. Elec. Code §20513(a)(4).

[5] §§609.771(2)–(4); Cal. Elec. Code §§20513(e), 20515(b).  *Compare also Kohls* Tr. 39 (noting that suits under AB 2655 could be brought by at least the "866 people qualifying as 'candidates' under Section 20512(c)"), *with* §609.771(4) (authorizing "cause[s] of action for injunctive or equitable relief" by: "(1) the attorney general; ***(2) a county attorney or city attorney; (3) the depicted individual; or (4) a candidate for nomination or election to a public office who is injured or likely to be injured by dissemination.***")) (emphasis added).  There are ***854*** cities in Minnesota.

[6] Unless otherwise indicated, emphases in quotes are added and internal citations and quotations are omitted.

*Kohls* reflects just how strong X Corp.'s Motion is on the merits of its Section 230 claim. Perhaps it is unsurprising then, that Defendant dedicates over half of its opposition brief (ECF 38) ("Opp.") to technical standing and ripeness issues that distract from the merits. But those efforts fall flat: X Corp. has standing, its Section 230 claim is ripe, and it will suffer irreparable harm—indeed, the very harm Section 230 was enacted to protect against—if its claim is not decided now.

***X Corp. has standing.*** There exists a credible threat of prosecution against X Corp. from the AG, who notably has refused to disavow enforcement of the statute against X Corp. (*see* Opp. 3). Plaintiff has sufficiently alleged an intention to engage in a course of conduct that would violate Section 609.771, and the adjudication of its rights under federal law cannot be contingent on Plaintiff first exposing itself to criminal indictment or potentially costly lawsuits seeking equitable relief. And that is especially true in a case, such as this one, involving Section 230 immunity, because the very purpose of Section 230 is to shield interactive computer service ("ICS") providers, such as Plaintiff, from liability and, as noted by Judge Mendez in the AB 2655 case, even the ***threat of liability*** might cause ICS providers to self-censor content on their platforms. It is for this very reason that Section 230 immunity is often called an immunity from suit, not just an immunity from judgment.

And Section 609.771—which provides for ***potential criminal penalties*** and civil injunctive and other equitable relief against ICS providers that fail to censor content arguably covered by the statute, but no liability whatsoever for censoring too much

covered content—sets up perverse incentives for platforms to over-censor any content that even presents a close call under the statute. Failing to adjudicate Plaintiff's Section 230 claim now will leave that significant threat of liability out there, which will interfere with the type of self-regulation that Section 230 was designed to promote and result in the very harm that Section 230 was enacted to protect against.

*X Corp.'s Section 230 claim is ripe.* Plaintiff's claim presents a purely legal question that would not benefit from any further factual development, and Plaintiff will suffer irreparable harm if the Court does not consider it now. The Section 230 immunity relief Plaintiff seeks is within the heartland of the statute as interpreted by the Eighth Circuit in *Johnson* v. *Arden*, 614 F.3d 785 (8th Cir. 2010)—i.e., content "originating with third-party users" (*id.* at 792), even where X Corp. knows about the content's purported unlawfulness (*see id.* at 788). This renders Defendant's argument—that further factual development is needed because there could be instances where the relevant content is X Corp.'s first-party speech—nothing more than a red herring.

This Court has broad equitable discretion to frame an appropriate declaration and injunction that will protect Plaintiff from claims arising from third-party-generated content that are plainly barred by Section 230(c)(1), while making clear that the injunction does not apply to instances in which X Corp. generates the content itself. Such a declaration and injunction are needed now; the dispute about them is already ripe and needs no further factual development. Without such relief, the very harms that Section

230 was designed to prevent (i.e., self-censorship by ICS providers, such as Plaintiff, caused by the threat of potential liability in close cases) will follow.

For these reasons and those set forth below, the Court should grant Plaintiff's Motion, enter judgment on the pleadings for Plaintiff under Rule 12(c), declare that the penalties and suits authorized by Section 609.771(3) and (4) violate and are preempted by Section 230(c)(1) and (e)(3) where they derive from content on the X platform that X Corp. or X did not itself provide.

<h3 style="text-align:center"><u>ARGUMENT</u></h3>

**I.    Section 230 Protects Plaintiff From the Very Harm Imposed on it by Section 609.771**

Section 609.771 is in direct conflict with the core purpose of Section 230: "Congress' desire to promote unfettered speech on the Internet[.]" *Zeran* v. *Am. Online, Inc.*, 129 F.3d 327, 334 (4th Cir. 1997). If not enjoined, Section 609.771 will disrupt the free flow of information on the internet, and on X, because its enforcement system, backed with the threat of criminal liability, heavily incentivizes platforms to err on the side of removing any content that presents even a close call as to whether it is a "deep fake" prohibited by the statute. The statute imposes potential criminal penalties and/or costly civil lawsuits on platforms that fail to remove content that is claimed to violate the statute and complete immunity to platforms that remove all content presenting a close call. Common sense dictates that platforms wanting to avoid expensive lawsuits or threats of

5

criminal prosecution will err on the side of censorship of any close call.[7]  To make matters worse, the speech at issue is core political speech around the time of an election, when it is most crucial for such speech to flow freely and not be subjected to threats of potential criminal liability.

Section 230 was intended to "promote the continued development of the Internet and other interactive computer services and other interactive media," because they offer "users a great degree of control over the information that they receive" and a "forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity."  47 U.S.C. §230(a)(2)–(3), §230(b)(1).  Section 230 promotes "an open and robust internet by preventing the speech-chilling threat of the heckler's veto," and for that reason Section 230 immunity "should be resolved at an earlier stage of litigation."  *Jones* v. *Dirty World Ent. Recordings LLC*, 755 F.3d 398, 417 (6th Cir. 2014).

Significantly, Section 230 immunity applies not only to protect ICS providers from actual judgments, but also from ***the threat of potential liability***.  Thus, Section 230 was enacted to rectify the "'obvious chilling effect' the 'specter of tort liability' would otherwise pose to interactive computer service providers given the 'prolific' nature of

---

[7] Section 609.771 will force X Corp. to over-censor core political speech.  *See* Complaint (ECF 1) ("Compl.") ¶15 ("The statute greatly incentivizes covered platforms to censor all content that could reasonably fall within the statute's purview to avoid substantial enforcement costs.  This, in turn, will severely chill important political speech[.]"); *id* ¶2 (Section 609.771 "will lead to blanket censorship"); *id.* ¶4 (The "system" imposed under Section 609.771 "will inevitably result in the censorship of wide swaths of valuable political speech and commentary[.]"); *id.* ¶¶10–11, 20–21, 54.

speech on the Internet." *Nemet Chevrolet, Ltd.* v. *Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) (quoting *Zeran*, 129 F.3d at 331). Because the mere threat of liability can undermine the purpose of the statute, Section 230 is considered "an ***immunity from suit*** rather than a mere defense to liability." *Jones*, 755 F.3d at 417; *Nemet*, 591 F.3d at 254.[8] Section 230 protects against even "***threats*** of liability" and "litigation ***risk***," because they can alter how an ICS moderates content on its platform, and are thus themselves deterrents to the free-flow of information on the internet. *See Kohls* Tr. 38– 39. That is why X Corp. faces irreparable harm now and cannot wait for (unnecessary) further factual development to frame the outer edges of its Section 230 immunity. Indeed, Section 230(e)(3), which is Section 230's "express preemption clause," "***not only prevents the imposition of liability*** under inconsistent state laws," but also "***prevents any action from being brought*** under an inconsistent state law." *Id.* 32 (citing 47 U.S.C. §230(e)(3)); *see also id.* 40 (explaining that AB 2655 incentivized "over-censorship" to the "detriment" of X's users and interfered with the "public's access to an uninhibited marketplace of ideas").

---

[8] Courts have uniformly explained that Section 230 provides immunity "from ***suit***." *See, e.g.*, *Ben Ezra, Weinstein, & Co., Inc.* v. *Am. Online Inc.*, 206 F.3d 980, 983 (10th Cir. 2000); *Carafano* v. *Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003); *Zeran* v. *Am. Online, Inc.*, 958 F. Supp. 1124, 1134 (E.D. Va. 1997), *aff'd*, 129 F.3d 327; *Klayman* v. *Zuckerberg*, 753 F.3d 1354, 1360 (D.C. Cir. 2014); *M.A. ex rel. P.K.* v. *Vill. Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1058 (E.D. Mo. 2011).

## II.    X Corp. Has Standing, Its Section 230 Claim Is Ripe, And It Will Suffer Irreparable Harm Absent Judicial Review

### a.  X Corp. Has Standing

X Corp. has standing for its Section 230 claim because it (1) faces a credible threat of prosecution, (2) has alleged an intent to violate the statute, and (3) is irreparably harmed by Section 609.771, which forces X Corp. to over-censor core political speech on its platform.  A failure to rule now would thus chill X Corp.'s own speech by forcing it to censor speech published on its platform by third parties.  Such a result would conflict directly with the core purpose of Section 230; accordingly, Plaintiff's claim must be decided now.

The law does not require X Corp. to wait to be indicted or sued before challenging Section 609.771.  "When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Babbitt* v. *United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979).  And "[w]here the enforcement of a regulatory statute would cause plaintiff to sustain a direct injury, the action may properly be maintained, whether or not the public officer has 'threatened' suit," because the "presence of the statute is threat enough[.]" *United Food & Com. Workers Int'l Union, AFL-CIO, CLC* v. *IBP, Inc.*, 857 F.2d 422, 428 (8th Cir. 1988); *see Religious Sisters of Mercy* v. *Becerra*, 55 F.4th 583, 605 (8th Cir. 2022) ("reject[ing]" the government's argument that the plaintiffs lack injury because it "has not to date taken a position on

8

whether plaintiffs' conduct violates the relevant statutes and has not threatened any enforcement action"—such an assertion "is actually a conce[ssion] that it may do so."). And where, as here, "authorities" have not "actually refused to enforce a statute, a plaintiff's fear of prosecution for illegal activity is objectively reasonable." *Jones* v. *Jegley*, 947 F.3d 1100, 1104 (8th Cir. 2020).

**First**, given Section 609.771(3)'s provision of criminal penalties and the intent, as shown by the legislative record, to hold "platforms [] more culpable than they currently are for the content that is being disseminated on them," Opp. 2 (quoting statement of Rep. Stephenson), there exists a "credible threat of prosecution" against Plaintiff. *See Jegley*, 947 F.3d at 1104. X Corp.'s "fear of prosecution" is "objectively reasonable" and it need not "risk prosecution before challenging" Section 609.771. *Id.* That is particularly true on this fact pattern, because Section 230 provides X Corp. with "***immunity from suit*** rather than a mere defense to liability." *E.g.*, *Jones*, 755 F.3d at 408; *see, e.g.*, *Kohls* Tr. 38–39 (Section 230 protects from "***threats*** of liability" and "litigation ***risk***").

And while the AG asserts that "there is no history of" Section 609.771's "enforcement nor is there an outstanding threat of its enforcement against X," *see* Opp. 3, significantly, it has also failed to "disavow future enforcement." *See, e.g.*, *Religious Sisters of Mercy*, 55 F.4th at 605–06; *Backpage.com, LLC* v. *Cooper*, 939 F. Supp. 2d 805, 818 (M.D. Tenn. 2013) (finding that plaintiff had standing for pre-enforcement Section 230 challenge to state statute in part because "the state ha[d] not disavowed its intent to prosecute").

***Second***, Plaintiff has alleged an intention to engage in a course of conduct that would violate Section 609.771. Plaintiff alleges that it "could be accused of violating the statute—and potentially be subjected to criminal liability—for merely having ["[d]eep fakes" (as defined under §609.771(1)(d))] displayed on its platform within the time periods set forth under Section 609.771(2)(a)(3)(i)–(ii)," because doing so would be "contracting with a user (through Terms of Service), resulting in the 'dissemination' of a deep fake that satisfies" Section 609.771(2), as long as it "'knows or acts with reckless disregard' about whether the material in question was a 'deep fake' under the statute." Compl. ¶8; *accord id.* ¶34 ("X Corp. is, at least, a 'person' that—by requiring users to agree to its Terms of Service before they may use the platform, after which the user could engage in conduct prohibited by the statute—'enters into a contract or other agreement to disseminate a deep fake' under the circumstances set forth in and proscribed by Section 609.771(2)(a).") (citing *id.* Ex. 7 (*Terms of Service*, X, https://x.com/en/tos)).

The statute's mens rea requirement does little to allay this fear of prosecution. A single complaint through X's reporting process about any of the billions of posts on X each year, can be argued to put Plaintiff on notice of a prohibited "deepfake" under the statute. *See* Compl. Ex. 7 at 5 of 18 (outlining X's reporting processes); *id.* Ex. 9 (*Authenticity*, X (Jan. 2025), https://help.x.com/en/rulesand-policies/authenticity) at 13 of 15 (same). Any party could easily "notify" X that a particular third-party post is, in their view, objectionable, and given the "vast" and "staggering" "amount of speech communicated through interactive computer services," X "would be faced with ceaseless

choices of suppressing controversial speech or sustaining prohibitive liability." *Zeran*, 129 F.3d at 332–33. And under Section 609.771, Plaintiff will have no liability for any post that it removes, but potential criminal liability if it keeps any post up that has been called into question. Thus, it is the mere prospect of indictment and suit that irreparably harms Plaintiff under Section 230 and undermines its purpose.

Defendant incorrectly argues that Plaintiff lacks standing because X's "terms of service preemptively prohibit any use of deepfakes," "require compliance with laws," and "make[] clear that any violation of law by a user is the responsibility of the user." Opp. 9. But X's content-moderation "policies are different from, and in certain respects conflict with, those set forth in Section 609.771." Compl. ¶35. The statute thus "impermissibly substitutes the State's content-moderation policies" for X Corp.'s and "imposes liability" on it for "noncompliance with the State's preferred content-moderation policies." *Id.*; *accord Kohls* Tr. 39 (AB 2655 subjected X Corp. to irreparable harm because the "loss" of its "Section 230 immunity would upend" its "existing content moderation scheme"). For instance, where X is "unable to reliably determine" if certain media is "misleading," it "may not take action," *see* Compl. Ex. 9 at 11 of 15, even where Section 609.771 might require its removal. X also allows its users to "shar[e] manipulated or out-of-context media in non-deceptive ways" that could be argued to violate Section 609.771. *Id.* at 12 of 15.

And even if the standards under X's policies and the statute ***were*** identical, courts and Defendant could still disagree with X Corp. about how to apply them. For this reason,

11

statutes substituting the government's judgment for the platform's about what content is permitted are preempted by Section 230.  *See Backpage.com, LLC* v. *McKenna*, 881 F. Supp. 2d 1262, 1266, 1269–71 (W.D. Wash. 2012) (finding that plaintiff, operator of online advertising service, had standing for pre-enforcement Section 230 challenge to state statute that prohibited the knowing dissemination of material that was also prohibited by plaintiff's terms of use).

***Third***, given Plaintiff's objectively reasonable fear of prosecution under Section 609.771, the statute will lead to objectively "[r]easonable chill," *see 281 Care Comm.* v. *Arneson*, 638 F.3d 621, 627 (8th Cir. 2011), and will compel Plaintiff to "take significant and costly compliance measures," *Virginia* v. *Am. Booksellers Ass'n,* 484 U.S. 383, 392 (1988), by strongly incentivizing Plaintiff to over-censor its users' speech.  This self-censorship—driven by fear of criminal prosecution and costly civil suits permitted under Section 609.771—chills Plaintiff's own protected editorial speech and provides further support for Plaintiff's standing.[9]

*Kohls* is instructive on this point.  In permanently enjoining AB 2655's enforcement against X Corp., the court held that X Corp. would be irreparably harmed absent injunctive relief because the "loss" of its "Section 230 immunity would upend" its "existing content moderation scheme" and "subject [it] to litigation risk for failing to comport with" the statute's "complicated method of election content moderation." *Kohls* Tr. 39.  Even the "***risk***" of litigation and the "***threat***" of liability under AB 2655 caused

---

[9] *See* Compl. ¶¶15, 2, 4, 10–11, 18, 20–21, 54.

X Corp. irreparable harm by "incentiviz[ing]" it to "censor too much to avoid liability," and because such "over-censorship would eliminate content" to the "user's detriment and would harm the public's access to an uninhibited marketplace of ideas." *Id.* 38–40. Put differently, the threat of suit alone is enough to change the content-moderation behavior of an ICS such as X, and that causes irreparable harm on its own. That is why Section 230 "not only prevents the imposition of liability" under inconsistent state laws, but "***prevents any [such] action from being brought***." *Id.* 32 (citing 47 U.S.C. §230(e)(3)).

### b. X Corp.'s Section 230 Claim is Ripe

X Corp.'s Section 230 claim is ripe and "fit for judicial decision," because it "would not benefit from further factual development and poses a purely legal question not contingent on future possibilities." *Sch. of the Ozarks, Inc.* v. *Biden*, 41 F.4th 992, 998 (8th Cir. 2022); *see Iowa League of Cities* v. *E.P.A.*, 711 F.3d 844, 867 (8th Cir. 2013) ("Fitness rests primarily on whether a case would benefit from further factual development, and therefore cases presenting purely legal questions are more likely to be fit for judicial review.").

Defendant asserts that it is "unclear" whether Plaintiff is seeking "immunity for all Deepfake Statute claims" or only from claims concerning material on X posted by a third party. Opp. 6 (conceding that, in the latter circumstance, "no discovery would be necessary"). It's the latter. As stated in its Complaint, Plaintiff challenges Section 609.771 under Section 230 because it "imposes liability on social media platforms by holding them responsible for the content of what is on their platforms, ***as if they were the***

*publisher of that content*."    Compl. ¶74; *see id.* ¶77 (alleging that "Section 609.771 directly contravenes the immunity provided to social media platforms by 47 U.S.C. §230(c)(1)" because it "treat[s] interactive computer service providers as the publisher or speaker of [] information *provided by another information content provider*.").

Put differently, Plaintiff does *not* seek immunity from claims under Section 609.771 where it is the information content provider of the infringing content, i.e., where X Corp. "originat[ed]" the relevant material. *Arden*, 614 F.3d at 792. So no further factual development is needed because, per Plaintiff's claim, so long as liability derives from content posted on X by a third party—i.e., where X is not the "information content provider" (47 U.S.C. §230(f)(3))—the cause of action must be barred by Section 230 as a purely legal matter, as Defendant appears to concede. *See, e.g.*, Opp. 6.

Defendant also suggests that the mens rea requirement of the statute is an obstacle to the Court hearing the case now. *Id*. 9 (arguing that the case cannot be heard now, in part because X does not allege that it has the "prerequisite mens rea"). But that ignores the fact that Section 230 immunity applies to ICS providers, even if they have knowledge of the content of the material at issue. *See Arden*, 614 F.3d at 788.

On this point, the Eighth Circuit's decision in *Arden* is crucial. *Arden* concerned claims for defamation, injurious falsehood, and intentional infliction of emotional distress against InMotion Hosting Inc., an internet service provider, arising from statements posted by a third party on a website hosted by InMotion. *Johnson* v. *Arden*, 2009 WL 10672018, at \*1 (W.D. Mo. June 8, 2009), *aff'd*, 614 F.3d 785. The Eighth Circuit

14

immunized InMotion from those claims, even though the plaintiffs alleged that InMotion had knowledge of the unlawful nature of the statements. *See Arden*, 614 F.3d at 788 (noting that plaintiffs asked InMotion to remove the statements).[10]  Because Section 230 provides X Corp. with immunity even where it has knowledge or acts with reckless disregard about whether the item being disseminated is a deepfake in violation of the statute,[11] Section 230 will provide immunity in every instance covered by Plaintiff's Section 230 claim.  There is thus no reason to delay resolution of the claim, as Defendant suggests.

And to be sure, this Court has broad equitable discretion and judgment to frame the scope of an injunction based on equitable principles and the "equities of a given case." *See, e.g.*, *Rodgers* v. *Bryant*, 942 F.3d 451, 458 (8th Cir. 2019).  Here, principles of equity favor the entry of an injunction that would preclude indictment and claims against Plaintiff under Section 609.771 where it did not "originat[e]" the relevant content, even where Plaintiff is alleged to know about the unlawful nature of the content.  *Arden*, 614 F.3d at 788, 792.  Then, the tougher Section 230 fact patterns proffered by Defendant (*e.g.*, Opp. 19 n.6) can be litigated while such an injunction is in place, which would protect Plaintiff

---

[10] In addition, knowledge is a required element under Missouri law for each of the plaintiffs' claims.

[11] *Accord, e.g.*, *Gregerson* v. *Vilana Fin., Inc.*, 2008 WL 451060, at *9 n.3 (D. Minn. Feb. 15, 2008) ("Section 230 immunity extends even after Plaintiff [is] made aware" of the "objection[able]" nature of the content); *Universal Commc'n Sys., Inc.* v. *Lycos, Inc.*, 478 F.3d 413, 420 (1st Cir. 2007) ("It is, by now, well established that … Section 230 immunity applies even after notice of the potentially unlawful nature of the third-party content."); *Zeran*, 129 F.3d at 332–33 (same).

from the very conundrum that Section 230 was enacted to protect: "suppress[]
controversial speech or sustain[] prohibitive liability." *Zeran*, 129 F.3d at 333.  Such an
outcome would also satisfy "Congress' desire to promote unfettered speech on the
Internet." *Id.* at 334.

Defendant also argues that Plaintiff's Section 230 claim is not ripe because the
parties don't yet know whether any action that Defendant brings will be "civil or
criminal." Opp. 12.  But this too misses the mark, as Section 230's plain language makes
clear that its carveout regarding criminal law applies only to ***federal*** criminal laws—*see*
47 U.S.C. §230(e)(1) ("Nothing in this section shall be construed to impair the
enforcement of . . . any [] ***Federal*** criminal statute.")[12]—and, in any event, whether
Section 230 provides immunity only to state criminal law is a purely legal question that
this Court can decide now with no further factual development. *See Roth* v. *Austin*, 619
F. Supp. 3d 928, 939, 964 (D. Neb. 2022) (that an issue turns on "statutory interpretation"
does not preclude prudential ripeness).

Again, *Kohls* is instructive.  *Kohls* demonstrates that Plaintiff's Section 230 claim
is ripe and will not benefit from any further factual development.  In *Kohls*, the
defendants—making similar arguments to those advanced by Defendant here—urged the
court to reject X Corp.'s Section 230(c)(1) claim because AB 2655 applied "broadly to
large online platforms," not just to social media platforms such as X, so it was "entirely
possible that there are regulated entities that the statute applies to that do not act as

---

[12] *Accord, e.g.*, *McKenna*, 881 F. Supp. 2d at 1275.

publishers," and there could be instances where AB 2655 would regulate the platforms' "own conduct," such as where they "engage in . . . expressive activity ala *Moody*." *Kohls* Tr. 11–12, 20.   But the court rightfully rejected the defendants' invitation to inject hypothetical scenarios into the law and properly interpreted X Corp.'s Section 230(c)(1) claim as purely legal and covering situations where it does "not create [its] own content but rather allow[s] users to post on [its] platform[]." *Id.* 33; *see also id.* 21 ("[The platforms] don't have anything to do with these . . . videos . . . they're not involved in the production of these materials.").

This Court should do the same here.  Defendant argues that it is "unclear" whether Plaintiff is seeking "complete immunity for all Deepfake Statute claims" or only those deriving from third-party content on the X platform.  Opp. 6.  But Plaintiff's Complaint makes clear that it seeks immunity within Section 230(c)(1)'s heartland—that is, from being held "responsible for the content of what is on" its platform, as if it "were the publisher of that content," *e.g.,* Compl. ¶74, just as it did in *Kohls*.  *Accord Arden*, 614 F.3d at 792.  No further factual development is needed, and there is no reason to delay the resolution of Plaintiff's Section 230 claim.  And this is particularly true because Plaintiff will suffer harm—indeed, the very harm Section 230 was enacted to prevent—to the extent Section 609.771 is not declared unlawful and enjoined, and inversely Defendant will suffer no harm at all if the statute is declared unlawful and enjoined.

Finally, Defendant is not saved by *Google, Inc.* v. *Hood*, 822 F.3d 212 (5th Cir. 2016) (cited in Opp. 12–13).  *Hood* concerned a "non-self-executing" subpoena that could

not be enforced by the Mississippi Attorney General—rather, the Attorney General could apply for relief only if Google refused to comply with the subpoena. *Id.* at 224–26. The court also noted that the injunction it was overturning "cover[ed] a fuzzily defined range of enforcement actions that [did] not appear imminent." *Id.* at 227. Those subject matters "rang[ed] from alleged facilitation of copyright infringement" to "human trafficking." *Id.* The prospect of enforcement was therefore not "sufficiently imminent or defined" to merit an injunction. *Id*. at 228.

Here, by contrast, a wide array of politically motivated actors, including but not limited to Defendant, have clear authority to enforce the statute. §609.771(4). And the statute clearly sets forth the criminal penalties (§609.771(3)) and civil actions (§609.771(4)) that it authorizes. In addition, here, unlike in *Hood*, there are allegations that the statute will force Plaintiff to over-censor speech, and thus chill its own protected editorial discretion. *See also Kohls* Tr. 40 (this causes X Corp. irreparable injury). Indeed, courts have declined to follow *Hood* on this very basis. *See, e.g.*, *Media Matters for Am.* v. *Paxton*, 732 F. Supp. 3d 1, 26 (D.D.C. 2024) (noting that, in *Hood*, the Fifth Circuit "did not have before it, as here, self-censorship and other chilling effects"), *aff'd*, 138 F.4th 563 (D.C. Cir. 2025).

Nor does *Publius* v. *Boyer-Vine*, 237 F. Supp. 3d 997 (E.D. Cal. 2017) (cited in Opp. 12–13), support Defendant's argument. *Publius*'s reasoning—that "the mere *threat* of a lawsuit that ostensibly would violate [plaintiff's] §230(c) immunity" does not "constitute[] a violation of §230 itself," *id.* at 1028 (emphasis in original)—flatly

contradicts (1) the statute's plain language, 47 U.S.C. §230(e)(3) ("No cause of action *may be brought* . . . under any State or local law that is inconsistent with this section."), (2) the judicially ratified bedrock principle that Section 230 provides "immunity *from suit*," *e.g.*, *Jones*, 755 F.3d at 408, and (3) subsequent, recent, on-point E.D. Cal. authority, *see Kohls* Order at 2–3.  Moreover, *Hood* and *Publius* are against the weight of authority, under which courts routinely hear pre-enforcement Section 230 challenges to state statutes.  *See, e.g.*, *Kohls* Order; *McKenna*, 881 F. Supp. 2d at 1271–75; *Cooper*, 939 F. Supp. 2d at 826–28.

In the end, X Corp.'s Section 230 claim is purely legal, would not benefit from further factual development, and is ripe for resolution now.

### c.  X Corp. Will Suffer Irreparable Harm Absent Judicial Review

X Corp. satisfies the second prong of the prudential ripeness inquiry because it would suffer "hardship" if the Court "withhold[s] [] consideration" of its Section 230 claim.  *Iowa League of Cities*, 711 F.3d at 867.

Defendant argues that Plaintiff will suffer no such hardship because it has "every right to raise its immunity and preemption defenses should an enforcement action arise in the future."  Opp. 13.  Again, this contradicts the plain text of §230(e)(3) and flips well-established Section 230 law on its head.  Section 230 "immunity is an *immunity from suit* rather than a mere defense to liability."  *E.g.*, *Jones*, 755 F.3d at 417.

The reason that Section 230 immunity is an immunity *from suit* is to prevent the exact situation that has unfolded here, where Plaintiff will suffer harm absent judicial

19

consideration of its Section 230 claim because the credible threat of prosecution or suit from those responsible for enforcing the statute will strongly incentivize Plaintiff and other covered platforms to over-censor the speech of its users—for fear of prosecution and injunctive and equitable suit under the law—which chills Plaintiff's own protected editorial speech as well. *Supra*, at 12; *e.g.*, *Kohls* Tr. 39–40. This impact on Plaintiff's activities further supports a finding of prudential ripeness. *See, e.g.*, *Alverson* v. *Brown Cnty.*, 2023 WL 3764958, at *5 (D.S.D. June 1, 2023) ("A heightened uncertainty and resulting behavior modification by a plaintiff due to delayed resolution can suffice to satisfy ripeness concerns."). And the statute's perverse incentives—"simply to remove [content] upon notification" of its objectionable nature, "whether the contents were [objectionable] or not"—profoundly conflicts with "Congress' desire to promote unfettered speech on the Internet," which "must supersede conflicting common law causes of action," *Zeran*, 129 F.3d at 333–34, such as those authorized and encouraged by Section 609.771 here.

And, significantly, Defendant will suffer ***no harm at all*** if the Court enters a judicial declaration and an injunction preventing suits to be brought under Section 609.771 on the basis of third-party content. *See, e.g.*, *Rodgers*, 942 F.3d at 458.

## III.   Section 609.771's Penalty and Relief Provisions Violate and are Preempted by Section 230(c)(1) and (e)(3)

The parties agree that Section 230 preempts "state laws that treat an [ICS] as the publisher or speaker of information provided by [a] third party." Opp. 15. Again, that is Plaintiff's Section 230 claim, *see* Compl. ¶¶74, 77, just as it was in *Kohls*.

Defendant's series of hypotheticals are thus irrelevant, as Defendant already appears to concede. *See* Opp. 19 n.6. It is also entirely irrelevant, for purposes of its claim, ***how*** X Corp. would "identify deepfakes related to elections." Opp. 21 n.8 (postulating that X may "employ algorithms" to do so). Plaintiff seeks immunity from the penalties and claims authorized under Section 609.771(3) and (4) for content on its platform that is posted by a third party and not by X Corp. or X. That is a purely legal question, the answer to which under Eighth Circuit law is that Section 230 invariably provides immunity, whether or not Plaintiff has knowledge of the purportedly unlawful nature of the content at issue. *Arden*, 614 F.3d at 788, 792; *accord, e.g.*, *Gregerson*, 2008 WL 451060, at *9 n.3.

*Kohls* warrants discussion once more. *Kohls* demonstrates that this Court can and should enter the same judgment on Section 609.771 that the Eastern District of California entered as to the materially similar AB 2655. The statutes carry similar prohibitions and authorize similar penalties. The "conduct" each "regulate[s]" is "traditional publishing activity that Section 230 immunizes." *Kohls* Tr. 34. And their statutory "regime[s]" are both "antithetical to the objectives set forth by Congress in enacting Section 230, which were to encourage self-regulation and self-moderation unfettered by the types of threats of liability" that the statutes "effect[] and encourage[]." *Id.* 38. And significantly, X Corp.'s claim is the same across both cases. The California AG's argument that it was "entirely possible" there could be instances where AB 2655 would apply to non-publishing conduct, or could apply to X Corp.'s "own conduct" (i.e., where it "engage[d]

in . . . expressive activity ala *Moody*"), *id.* 11–12, 20, was rejected, as Defendant's similar argument here should be.

And again, the problem with Section 609.771, particularly under Section 230, is that it "effects and encourages" "***threats*** of liability" that will alter content-moderation and thus the flow of core political speech around the time of an election. *See id.* 38. Those threats alone violate Section 230(e)(3)'s mandate that "[n]o cause of action may be brought" that "is inconsistent with this section," because Section 230 "immunity is an ***immunity from suit*** rather than a mere defense to liability." *E.g.*, *Jones*, 755 F.3d at 417.

Defendant also argues that Plaintiff has not alleged that it knowingly (or with reckless disregard) disseminates deepfakes. Opp. 23. But Defendant is wrong because, as explained above in the context of standing (*supra*, at 8–10), X Corp. ***has*** alleged an intent to violate the statute. Again, given the volume of speech on platforms like X, it does not take much to allege that Plaintiff violated the statute because it "knows or acts with reckless disregard about whether the item being disseminated is a deep fake," or has "the intent to injure a candidate or influence the result of an election," §§609.771(2)(a), 2(a)(2), from being put on notice by complaints made through its reporting processes. *See* Compl. Ex. 7 at 5 of 18; *id.* Ex. 9 at 13 of 15; *see also Zeran*, 129 F.3d at 333.

Defendant further asserts, incorrectly, that Plaintiff's preemption claim premised on the so-called "contract provision" fails because (1) contract-based claims are not barred by Section 230 (citing *Calise* v. *Meta Platforms, Inc.*, 103 F.4th 732, 738 (9th Cir. 2024))

and (2) Plaintiff does not allege that it enters into contracts to disseminate deepfakes. Opp. 24.

***First***, Defendant misreads *Calise*. *Id. Calise* held—adopting the reasoning of *Barnes* v. *Yahoo!, Inc.*, 570 F.3d 1096, 1107 (9th Cir. 2009), *as amended* (Sept. 28, 2009)—that claims do not treat an ICS provider as the "publisher" of third-party content, and thus are not barred by Section 230(c)(1), where they derive from an "enforceable promise[]" made by the ICS provider to the party bringing suit. 103 F.4th at 743; *see also id.* at 743 n.4 (explaining that contract claims "rely on a formal agreement between the parties from which a duty springs"). In *Calise*, the Ninth Circuit explained that Section 230(c)(1) did not bar the plaintiffs' breach of contract and other claims that concerned Meta's purported violation of its contractual promise to the plaintiffs to "take appropriate action to combat spam advertisements." *Id.* at 743. And Meta's "duty arising from its promise to moderate third-party advertisements" was "unrelated to [its] publisher status." *Id.*

*Barnes* concerned essentially the same fact pattern. There, Yahoo had promised a user that it would remove "revenge" pornography content of that user posted on its site by an ex-boyfriend, and then failed to do so. *Barnes*, 570 F.3d at 1098–99. So while Yahoo did receive immunity under Section 230(c)(1) from a negligent undertaking claim regarding the very same conduct—since, there, Oregon law provided the relevant duty that Yahoo purportedly breached—Yahoo did not receive immunity from the plaintiff's promissory estoppel claim, because the plaintiff did not "seek to hold Yahoo liable as a

publisher or speaker of third-party content, but rather as the counter-party to a contract, as a promisor who has breached." *Id.* at 1102–03, 1107.

Here, the penalties imposed on Plaintiff under Section 609.771(3) and the suits that will be brought against it under Section 609.771(4) do not derive from some enforceable contractual promise made by Plaintiff to the Minnesota AG or to the other actors authorized to sue under the statute. Instead, those penalties and suits would clearly derive from Plaintiff's purported violation of the statute itself.

Defendant's argument also conflicts with the Eighth Circuit's decision in *E. Coast Test Prep LLC* v. *Allnurses.com, Inc.*, 971 F.3d 747, 752–53 (8th Cir. 2020). There, the Eighth Circuit affirmed judgment on the pleadings for Allnurses and barred plaintiffs' trade libel claim under Section 230(c)(1)—finding that defamatory posts on Allnurses' website by a third party could not be attributed to Allnurses—notwithstanding a terms of service, agreed to by the third parties and by Allnurses, containing a solicitation clause stating that Allnurses could solicit and pay users for articles and other content. *Id.* If Defendant were right that "[c]ontract-based claims are not barred by Section 230" (Opp. 24), then Section 230(c)(1) could not have immunized the trade libel claims in *Allnurses.com, Inc.* That is not the law.

**Second**, Defendant argues that Plaintiff does not allege that it enters into contracts to disseminate deepfakes. Opp. 24. But Plaintiff clearly does—i.e., "by requiring users to agree to its Terms of Service before they may use the platform, after which the user could engage in conduct prohibited by the statute," it "'enters into a contract or other

agreement to disseminate a deep fake' under the circumstances set forth in and proscribed by Section 609.771(2)(a)."  Compl. ¶34 (citing Compl. Ex. 7); *accord id.* ¶8.

Finally, Plaintiff did not waive its conflict preemption argument.  Plaintiff clearly alleged conflict preemption in its Complaint, *see* ¶¶21, 72, and included its conflict preemption argument in its opening brief.  Br. 9 ("Section 609.771 Is Subject to Express and Conflict Preemption); *id.* ("Section 609.771 directly conflicts with, and is thus preempted by, the immunity afforded by Section 230(c)(1)…"); *see also id.* 10 (describing legal standard of "conflict" preemption).

In any event, the argument is largely academic.  The reasons for preemption here satisfy the standards for both conflict and express preemption, and, given the wording of Section 230(e)(3), any law violating the express preemption provision will also be subject to conflict preemption.

## CONCLUSION

This Court should grant Plaintiff's Motion, enter judgment on the pleadings for Plaintiff under Rule 12(c), declare that the penalties and suits authorized by Section 609.771(3) and (4) violate and are preempted by Section 230(c)(1) and (e)(3) where they derive from content on the X platform that X Corp. or X did not itself provide, and enter a permanent injunction appropriately tailored to that relief.

Dated:  September 26, 2025           By: /s/ Joel Kurtzberg

CAHILL GORDON & REINDEL LLP
Joel Kurtzberg (admitted *pro hac vice*, SBN NY 2835007)
Floyd Abrams (admitted *pro hac vice*, SBN NY 1758184)
Jason Rozbruch (admitted *pro hac vice*, SBN NY 5753637)
32 Old Slip
New York, NY 10005
Phone: 212-701-3120
Facsimile: 212-269-5420
jkurtzberg@cahill.com
fabrams@cahill.com
jrozbruch@cahill.com

Erick G. Kaardal (SBN 229647)
MOHRMAN, KAARDAL & ERICKSON, P.A.
150 S. Fifth St., Ste. 3100
Minneapolis, MN 55402
Phone: 612-746-7724
Facsimile: 612-341-1076
kaardal@mklaw.com